RECEIVED
JUL 14 2025
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**______________ DIVISION**

Jeremy Spencer
(Enter Above the Name of the Plaintiff in this Action)

2:25 CV 0785

JUDGE MORRISON

MAGISTRATE JUDGE JOLSON

vs.

Jeffery R. Griffith Sr.
(Enter above the name of the Defendant in this Action)

If there are additional Defendants, please list them:

William Archer jr.

Shelley Reynolds

John Clark jr

**COMPLAINT**

I. Parties to the action:

Plaintiff: Place your name and address on the lines below. The address you give must be the address where the court may contact you and mail documents to you. A telephone number is required.

Jeremy Spencer
Name - Full Name Please - PRINT

c/o [1891 Grovepoint Dr.]
Street Address

[ Florence KY [41042]]
City, State and Zip Code

330-396-3566 spencerj2121@yahoo.com
Telephone Number

If there are additional Plaintiffs in this suit, a separate piece of paper should be attached immediately behind this page with their full names, addresses and telephone numbers. If there are no other Plaintiffs, continue with this form.

Defendant(s):

Place the name and address of each Defendant you listed in the caption on the first page of this Complaint. This form is invalid unless each Defendant appears with full address for proper service.

1. Jeffery R. Griffith [redacted]r.
   Name - Full Name Please
   100 E. Main Street, McArthur, OH 45651
   Address: Street, City, State and Zip Code

2. William Archer jr.
   100 E. Main Street, McArthur, OH 45651

3. Shelly Reynolds
   100 E. Main Street, McArthur, OH 45651

4. John Clark Jr.
   221 East Main Street, Jackson, OH 45640

5. __________

6. __________

If there are additional Defendants, please list their names and addresses on a separate sheet of paper.

II. Subject Matter Jurisdiction

Check the box or boxes that describes your lawsuit:

☒ Title 28 U.S.C. § 1343(3)
[A civil rights lawsuit alleging that Defendant(s) acting under color of State law, deprived you of a right secured by federal law or the Constitution.]

☒ Title 28 U.S.C. § 1331
[A lawsuit "arising under the Constitution, laws, or treaties of the United States."]

☐ Title 28 U.S.C. § 1332(a)(1)
[A lawsuit between citizens of different states where the matter in controversy exceeds $75,000.]

☒ Title 28 United States Code, Section 1367
[Other federal status giving the court subject matter jurisdiction.]

III. Statement of Claim

Please write as briefly as possible the facts of your case. Describe how each Defendant is involved. Include the name of all persons involved, give dates and places.

Number each claim separately. Use as much space as you need. You are not limited to the papers we give you. Attach extra sheets that deal with your statement claim immediately behind this piece of paper.

Please see attach paperwork

NOTE ~~John Clark~~ Jr. complaint may appear separate or has been filed separate and im unsure if i the plaintiff joins the different defendant parties or if that's done by the court. so his may appear separate. if nothing else its an additional "statment of claims/facts" to this one and should not be considered a revision, amendmant or anything of the like.

IV. Previous lawsuits:

If you have been a Plaintiff in a lawsuit, for each lawsuit state the case number and caption. (Example, Case Number: 2:08-cv-728 and Caption: John Smith vs. Jane Doe).

| Case Number | Caption | | |
|---|---|---|---|
| 2:24 - cv- 00144-DLB | Jeremy Spencer | vs. | Jacob Ganshirt |
| | | vs. | |
| | | vs. | |

V. Relief

In this section please state (write) briefly exactly what you want the court to do for you. Make no legal argument, cite no case or statutes.

See attached complaint

a) Declare that Defendants' conduct violated Plaintiff's rights under the Constitution and applicable federal and state laws;

b) Vacate and declare void ab initio any judgment or plea agreement obtained through coercion, due process violations, or lack of lawful jurisdiction;

c) Immediate expungement and sealing of the case CRA2400096(A,B,C,D,E) and TRD2301182

d) Award Plaintiff compensatory damages in an amount not less than $300,000 for economic loss, emotional distress, and violation of constitutional rights. This amount is sought collectively against all Defendants unless the Court determines apportionment by individual Defendant is warranted;

e) Award punitive damages in an amount not less than $500,000 against the Defendants in their individual capacities, for willful misconduct and bad faith. This punitive award may be assessed collectively or per Defendant as the Court deems just;

f) Award the cost of litigation and reasonable attorney's fees under 42 U.S.C. § 1988, amount TBD

g) Award a grand total of not less than $775,000 in monetary relief, intended as a collective sum unless the Court determines individual allocation is more appropriate based on the record;

h) Removal of all fingerprints, photographs, biological data gathered, and other personal Identifiers from Court record, and all associated agencies i.e. ODNR/ Southeastern Ohio Regional Jail, Sheriff Department, FBI, ATF ect…

i) Grant such other and further relief as the Court deems just and proper under the circumstances.

I state under penalty of perjury that the foregoing is true and correct. Executed on

this _____ day of ________________________, 20____.

______________________________

Signature of Plaintiff

# United States District Court

Southern District of Ohio
Eastern Division

Jeremy Spencer,
Plaintiff,
v.
John Clark Jr., Jeffrey Griffith,
William L. Archer Jr., Shelley Reynolds
Defendants.

## COMPLAINT FOR DAMAGES AND DECLARATORY & INJUNCTIVE RELIEF

(42 U.S.C. §§ 1983, 1985, 1986, 1988;
28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202;
42 U.S.C. § 2000bb–1)

Jury Trial Demanded

Filed by: Jeremy Spencer

# Table of Contents

I. INTRODUCTION AND SUMMARY OF CLAIMS ....................................3
II. JURISDICTION AND VENUE.......................................................4-5
III. PARTIES ...............................................................................5
IV. STATEMENT OF FACTS..........................................................5-11
V. CAUSES OF ACTION..................................................................11
Count 1: Violation of 42 U.S.C. § 1983.............................................11-13
Count 2: Violation of 42 U.S.C. § 1985(2)–(3) .................................13-15
Count 3: Violation of 42 U.S.C. § 1986.............................................15
Count 4: Violation of the United States Constitution Article III § 2.................16
Count 5: Lack of Jurisdiction .........................................................17
Count 6: Violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments..........18-20
Count 7: Violation of 42 U.S.C. § 2000bb–1 – Free Exercise of Religion..............20
Count 8: Civil Liability for Criminal Acts – Ohio Revised Code § 2307.60(A)(1)...........20
ORC § 2905.12 – Coercion: ..........................................................
ORC § 2905.11 – Extortion: ..........................................................
ORC § 2913.02 – Theft: ..............................................................
ORC § 2921.45 – Interference with Civil Rights: ...................................
ORC § 2923.01 – Criminal Conspiracy: ..............................................
ORC § 2923.03 – Complicity: .........................................................
ORC § 2921.32 – Obstructing Justice: ..............................................
ORC § 2921.13(A)(7) – Falsification: ...............................................
ORC § 2933.27 .........................................................................
ORC § 2945.71(C)(1) and § 2937.10 – Delay of Preliminary Hearing.................
ORC § 2945.37(G) – Competency Inquiry: .........................................
ORC § 2945.79(A) – Irregular Proceedings..........................................
ORC § 2981.11 – Custodial Care of Property: ......................................
ORC § 149.43(B)(1), (3) – Public Records Act: .................................. 21
Count 9......................................................................................22
Count 10: Fraud Upon the court ......................................................22-23
Count 11.....................................................................................23-24
VI. INJURIES / DAMAGES..................................................................24-25
VII. JURY DEMAND..........................................................................25
VIII. PRAYER FOR RELIEF..................................................................25-27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

Jeremy Spencer )
**C/O** [1891 Grovepointe dr.
Florence Ky 41042]
**Plaintiff** )
) **Case No:**____________________________
vs. )
)
**Jeffrey R. Griffith [redacted].** )
**William L. Archer, Jr.** )
**Shelley Reynolds** )
100 E. Main Street
McArthur, OH 45651
Phone: (740)- 596-4571
**John Clark Jr.** )
221 East Main Street )
Jackson, OH 45640 )
Phone:(740) 288-4200 )
**Defendant** )

**COMPLAINT FOR DAMAGES AND DECLARATORY & INJUNCTIVE RELIEF**
**(42 U.S.C. §§ 1983, 1985, 1986, 1988; 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202; 42 U.S.C. § 2000bb–1)**

## INTRODUCTION AND SUMMARY OF CLAIMS

Plaintiff Jeremy Spencer brings this civil rights action under 42 U.S.C. §§ 1983, 42 U.S.C. § 1985(3) and 1986 for civil conspiracy and failure to prevent known violations, as well as claims under 42 U.S.C. § 2000bb–1 for the burdening of religious exercise. Plaintiff seeks damages and equitable relief for a series of constitutional, statutory, and ethical violations committed under color of law by Defendants Jeffrey Griffith, William L. Archer Jr., Attorney John Clark Jr., and Shelley Reynolds. Plaintiff alleges defendants, while acting under color of law, acted outside the scope and jurisdiction of their official role, committed a series of constitutional, statutory, and ethical violations that culminated in the unlawful deprivation of Plaintiff's rights, liberty, property, religious freedom, and due process/fair trial.

Plaintiff alleges that these Defendants, individually and in concert, deprived him of rights secured by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United

States Constitution, as well as rights under Ohio statutory and common law. Plaintiff further asserts that the actions and constitutional violations committed by Jeffrey Griffith and William L. Archer Jr.—including their direct participation in unlawful property deprivation, coercive judicial practices, and deliberate obstruction of legal rights—were undertaken **outside the scope of their lawful duties/power and in clear absence of jurisdiction**. As such, Plaintiff contends that these defendants are not entitled to judicial or prosecutorial immunity, as their conduct falls within the well-established exceptions to such protections under federal law. **SEE [Plaintiff's Memorandum - the Inapplicability of Immunity to Defendants]**

Part of this complaint centers on Defendant John Clark Jr.'s ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), and his participation—through acts and omissions—in a broader pattern of unconstitutional conduct carried out with or alongside state actors Jeffrey Griffith Sr., and William Archer Jr.. Although Clark was privately retained, he knowingly or negligently failed to act on Plaintiff's repeated and documented concerns regarding unlawful seizures, due process violations, judicial misconduct, and the deprivation of religious property. Clark misrepresented key legal procedures and failed to raise constitutional objections at critical stages, materially contributing to coerced proceedings and a prejudicial outcome.

Central to this complaint is the unlawful and prolonged withholding of Plaintiff's personal and religious property—property which was not contraband, not subject to forfeiture, and not needed as evidence. Plaintiff repeatedly objected to this deprivation, and Defendant Clark was explicitly informed in writing and by phone of the property's seizure and religious significance. Despite his knowledge, Clark failed to demand its return, seek judicial relief, or challenge the actions of the prosecutor and judge who oversaw and enabled the unconstitutional retention of the property without legal justification.

The misconduct described here in occurred during the course of Vinton County Court Case Nos. CRA2400096,TRD2301182, and possible CRB2400096, from approximately May 3, 2024, to August 8, 2024.

Plaintiff seeks monetary damages, declaratory relief, injunctive remedies, and all other just relief as provided by law.

## I. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental jurisdiction for state law and tort claims). Declaratory and injunctive relief is authorized under 28 U.S.C. §§ 2201, 2202. Attorneys' fees and costs are available under 42 U.S.C. § 1988.

Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred primarily in Vinton County, Ohio. All Defendants performed, or failed to perform, official acts within this District, and Plaintiff was harmed by such conduct therein.

## II. PARTIES

**Plaintiff: Jeremy Spencer** is a US Citizen. At all times relevant to this Complaint, he was a defendant in criminal proceedings before Vinton County Court and the retained client of Defendant John Clark Jr.

**Defendant John Clark Jr.:** An attorney licensed to practice in Ohio, residing and operating a law practice within the state. He was privately retained to represent Plaintiff in Vinton County Case Nos. CRA2400096 and TRD2301182. Clark is sued in his individual capacity and as a co-conspirator acting under color of law.

**Defendant Jeffrey Griffith**: Acting as judge of the Vinton County Court. He is sued in his individual capacities.

**Defendant William L. Archer Jr.**: Prosecutor for Vinton County, sued in his individual capacities.

**Defendant Shelley Reynolds**: Deputy Clerk of the Vinton County Court, sued in her individual capacities.

## III. SUMMERY OF FACTS

1. **On May 2nd** while in custody of Southeastern Ohio Regional Jail (hence forth SEORJ), Jeremy Spencer (plaintiff) was allegedly arraigned before Jeffrey Griffith for the case CRA2400096(A,B,C,D,E) and TRD2301182. Jeremy was not informed whom was bringing about the charges (nature and cause), nor was there a review of the complaint. Jeremy reluctantly entered a plea of not guilty
2. A woman allegedly named Stormy Ball was in the room with Jeremy to present forms and submit documentation to him and the court record.
3. Jeffrey Griffith intentionally or by neglect or incompetence failed to confirm if Jeremy had adequate sleep, medical issues, drug, or alcohol impairment prior (within 24 hours) to his first court appearance to ensure Jeremy's cognitive ability was sound. Jeremy believes the Vinton County Court, nor the defendant Jeffrey Griffith, had proper jurisdiction over the matter.
4. Jeffrey Griffith intentionally imposed excessive bail, bonds, or fines ( $50,000) upon Jeremy at his first court appearance on May 2nd.
5. **On May 6th** Jeremy's father procured attorney John Clark jr. for Jeremy. John Clark procured a modified bond of which Jeremy was placed on house arrest at Jeremy's expense.

6. Jeremy was ordered to stay at his parent's domicile located in Florence Kentucky.
7. **On May 10th** around 7pm Jeremy was released from jail with the GPS ankle monitor and did not willingly sign the "contract"/order.
8. Jeremy believes there is no signed copy thus it was not a valid agreement and became a tool for extortion for money/federal reserve notes for Herb Mcquire.
9. Jeremy did not willingly agree to the conditions outlined in the Modified bond as he was under medical duress of which was being ignored and dismissed by the jail nurse/staff.
10. Upon Jeremys return home Jeremy was able to administer self-care and recover from his medical ailments.
11. **On May 26th**, Plaintiff Jeremy Spencer raised multiple concerns regarding procedural violations and his legal representation. In early morning emails, he reiterated that attorney John Clark had previously informed him—both via phone and email—that he had not yet been arraigned. Jeremy stated his intent not to enter any plea until after reviewing the evidence and again objected to the ongoing withholding of his religious property. He also expressed continuing concerns about constitutional and human rights violations and requested to be kept informed of all developments, even minor ones.
12. Later that morning, Clark replied dismissively to Jeremy's legal inquiries, stating that the upcoming May 30th date was merely a preliminary hearing and that discovery was not required beforehand. When Jeremy challenged this by requesting specific legal authority for the denial of access to evidence prior to a preliminary hearing, Clark responded by citing Ohio Criminal Rule 16, misrepresenting its applicability by asserting that discovery rights had not yet accrued due to an alleged lack of arraignment.
13. However, Jeremy contested this characterization, noting he had appeared before a judge on May 2nd who read the charges and discussed representation—an interaction he reasonably believed constituted an arraignment. Clark insisted otherwise, claiming no plea had been entered and therefore no arraignment had occurred.
14. The totality of these exchanges reflects apparent miscommunication or possible misrepresentation by Clark regarding basic procedural rights, including arraignment status and access to discovery, raising concerns of incompetence, negligence, or deliberate obstruction.

    **Refer to the "May 26th e-mail" chain as material evidence supporting these claims.**
15. **On May 30, 2023**, Plaintiff Jeremy Spencer appeared remotely via Zoom for his second court appearance, while his attorney, John Clark Jr., was physically present in the courtroom. The hearing was significantly delayed, beginning more than an hour after its scheduled time. Jeffrey Griffith rushed through the proceedings, citing the need to attend to jail inmates by noon. At no point did Griffith or attorney Clark inform Jeremy of the nature of the hearing or provide any procedural expectations beyond stating it would be brief.
16. During the hearing, Prosecutor William L. Archer Jr. voluntarily dismissed the "weapons under disability" charge. Following this, attorney Clark made a verbal motion on the record requesting the return of Jeremy's property, stating that Jeremy practices Native American religion and that certain seized items were religiously significant. This statement constituted actual notice to both Griffith and Prosecutor Archer that the property had First Amendment implications. However, neither official took action to identify, preserve, or return the religious items.

17. Prosecutor Archer falsely minimized the seizure, stating only a firearm was being held. Griffith, without clarifying or asking for further detail, erroneously assumed that the firearm was the item of religious concern. Clark failed to correct this misstatement. Griffith did not rule on the motion for return of property, nor did Clark insist upon one or cite applicable legal authority such as Ohio Revised Code §§ 2981.03 or 2737.03.
18. Despite knowing that religious property was at issue and that the firearms were no longer needed as evidence, Griffith declined to take sua sponte action to order the return of the seized items. This omission resulted in the continued deprivation of Jeremy Spencer's constitutional rights—including his Second Amendment rights and his religious freedom under both federal and Ohio law. Furthermore, Jeremy was neither read the charges during the proceeding nor asked to enter a plea. It remains unclear whether attorney Clark entered a plea on Jeremy's behalf at any time.
**Refer to "Court Video 1" for visual and audio documentation of May 30, 2023 events.**
19. Between **June 4 and June 26, 2023**, Plaintiff Jeremy Spencer repeatedly contacted his retained attorney John Clark regarding the return of seized property, the nature and scope of discovery, and the legality of the ankle monitor imposed through the bondsman. Clark acknowledged a prior motion for return of property but failed to provide follow-up or address the seizure of religious items.
20. Discovery was incomplete and never discussed with Plaintiff, nor was a copy of the discovery motion ever shared.
21. Plaintiff also requested clarification of legal sources and jurisdictional authority from Clark, which were dismissed by Clark in a hostile and condescending manner. Clark further threatened withdrawal, citing Plaintiff's tone, and ignored questions regarding missing complaints and procedural legitimacy.
22. During this period, Plaintiff experienced distress due to the bondsman's financial demands and feared re-arrest, which Clark's office declined to assist with. At no point did Clark provide adequate representation or remedy the procedural and constitutional issues raised.
**Refer to the June Correspondence Record for supporting** documentation.
23. **On June 27th**, Jeremy attended a third court appearance via the "ZOOM" application. The court session began over an hour later than the scheduled time once again , continuing the pattern of delayed proceedings. During this hearing, Jeremy's lawyer stated on the record that he had failed to file the paperwork necessary for the return of Jeremy's property and that he would file it "immediately." However, there was no further mention or follow-up regarding the return of Jeremy's property. The prosecutor, William L. Archer, Jr., was not present at the hearing; instead, the assistant prosecutor appeared and did not wish to engage in any plea negotiations. As a result, another pretrial hearing was scheduled for **July 11th.**
24. Later that same day, at approximately 4:00 PM, attorney John sent an e-mail to Jeremy's father—mistakenly—stating: "As to the issue of complaint. It appears you were mistaken bc we have located a copy of complaint that was given to you while you were incarcerated in the beginning." In the same email, John admitted, "I apologize I cannot find where we filed to have your items returned."
25. Despite these communications, Jeremy was never served a copy of the summons or complaint, and there is no record that service occurred. In fact, documents and information that emerged from Jeremy's open records request and FOIA response indicate that, had these

materials been presented to him earlier, Jeremy would have addressed the matter at that time with Clark via e-mail in order to make and maintain written record.
**Refer to the June 27 Court Record and June 27 Correspondence for supporting documentation.**

26. On **July 7, 2023** at 6:24 PM, Plaintiff Jeremy Spencer contacted his attorney, John Clark, to follow up on the return of his property, including religious items. On July 10 at 10:24 AM, Plaintiff received a copy of the motion Clark had filed but did not receive a signed court order or any of the property itself.
27. Later that day at 11:16 AM, Plaintiff emailed Clark again, raising concerns about the legal validity of the original traffic citation that served as the basis for the warrant, and again questioned the legality of the ankle monitor imposed as a condition of bond.
28. Plaintiff also cited statutory definitions related to "driver" and "motor vehicle" to get Clarks input. At 5:40 PM, Clark replied, stating that Plaintiff had "contracted" with the bondsman by paying for the ankle monitor and asserting that jail was the only alternative.
29. Clark also made an unsolicited reference to the U.S. Code, UCC, and maritime law—none of which Plaintiff had raised—leading to further confusion. In the same message, Clark acknowledged that the injuries and violations Plaintiff endured during incarceration could implicate constitutional rights, but stated, "I do not handle such matters" and Clark advised Plaintiff to seek separate counsel for any potential claims under 42 U.S.C. § 1983.

**Refer to the July 7–10 emails as evidence.**

30. On **July 11, 2023**, Plaintiff Jeremy Spencer was scheduled to appear for his fourth court hearing via Zoom, but the proceeding was again delayed by over an hour. Instead of a Zoom link, Jeremy unexpectedly received a phone call from his attorney, John Clark, and was only able to hear Clark during the call—Griffith, Archer, and/or other party were not audible.
31. When Jeremy raised concern about the lack of a Zoom hearing, Clark insisted that a phone call was "just as good." Plaintiff had no knowledge of whether the call was on the court record and felt that his right to private attorney-client communication during the plea negotiation process was violated.
32. Throughout the call, communication was disorganized and confusing. Jeremy could not distinguish whether certain statements were coming from his attorney, or the prosecutor. Clark failed to clearly convey the details of the plea offer and vaguely mentioned restrictions involving "the State," ODNR lands, and Vinton County, without explanation.
33. As a result, Jeremy was left to argue aspects of the deal himself, under duress and without a full understanding of the consequences or meaning. Jeremy feared that asking questions would frustrate the court or his attorney, thereby worsening the terms offered.
34. Overcome with anxiety and confusion, Plaintiff felt coerced and silenced. A plea agreement was reached, but no judicial colloquy took place to ensure Jeremy's plea was made knowingly, intelligently, or voluntarily, as required by law. Jeffrey Griffith failed to conduct this mandatory dialogue before accepting the plea. Later, Jeremy received the plea paperwork by email and signed it under duress, noting "without prejudice" and "beneficiary" on the document.

    **Refer to the July 11, 2023 communications and hearing record as evidence.**

35. Beginning on **July 12, 2023**, Plaintiff Jeremy Spencer was informed by attorney John Clark that Jeffrey Griffith rejected his signed plea paperwork due to the inclusion of "under duress"

and "without prejudice," and that a new court appearance was scheduled for **August 8**, in person. In that same communication, Clark stated that his "representation has concluded" and that he was "done," suggesting withdrawal from the case—though he continued to participate through August.

36. In the days following, Jeremy requested clarification about the terms of the plea, the legal implications of signing "without prejudice" or "all rights reserved," and the scope of restricted areas mentioned in the plea terms (e.g., ODNR parks vs. state or national forests). Clark responded with open hostility, dismissing Plaintiff's legal inquiries as "silly," "cute," or "superfluous," and warned that such behavior might provoke the judge or result in incarceration. When Plaintiff cited definitions and legal resources to justify his questions, Clark repeatedly refused to engage meaningfully, often responding with sarcasm or threats, despite Plaintiff's documented anxiety and repeated attempts to comply.
37. On **July 16**, Jeremy informed Clark that he had re-signed and re-submitted the plea paperwork and received a reply of "message received, thank you" from Griffith, but no confirmation of acceptance. Clark again responded that the judge and prosecutor were dissatisfied and would not approve the plea due to Plaintiff's added language. Jeremy proposed an earlier appearance for resolution, which was rejected. Clark claimed the modified signatures "created a mess" and confirmed that the ankle monitor would remain until judicial approval via a formal entry.
38. From **July 18–19**, Plaintiff emailed both Griffith and Clark to inquire about the return of his seized property, particularly religious items, and whether release was being improperly conditioned on the plea's acceptance. Griffith never responded, and Clark deflected, providing no record or legal authority that the judge had ordered return of property. Jeremy asked directly whether the property was being withheld for reasons unrelated to its evidentiary value; Clark again failed to provide a yes or no answer, instead reiterating that Plaintiff had "messed it up."
39. Between **July 27 and August 6**, Plaintiff asked whether an **Alford plea** was available, citing ongoing concern over coercion. Clark dismissed this, stating Alford pleas were for felonies and again accused Plaintiff of sabotaging the case. Plaintiff also challenged Clark on due process, questioning how he could have been "served" with charges he was never formally given, and sought the relevant legal citations. Clark responded by vaguely referencing Crim. R. 49 and Crim. R. 52, offering definitions but no specific service record or legal confirmation that due process had been satisfied. Clark had habitually ignored questions in both this e-mail and other.
40. On August 7, Jeremy emailed attorney John Clark, asking for clarification on the term "being served," questioning whether it falls under "Rule 4 - Process: Summons." He indicated that, despite recent concerns, he planned to proceed with preserving the plea agreement unless new exculpatory evidence emerged. In response, Clark explained that "service" refers to notifying a party of legal action, typically involving delivery of initial pleadings to a defendant, and is also required when reopening a case. He cited Criminal Rules 49 and 52 regarding service and harmless error. However, Jeremy had been arguing with Clark stating he had not been served according to law.

    **Refer to July 12–August 7 communications and emails as supporting evidence.**
41. On **August 8, 2023**, Plaintiff Jeremy Spencer appeared at the courthouse for a scheduled hearing. After checking in with the court clerk, he waited in the hallway due to the courtroom's limited space. Attorney John Clark arrived on time but did not speak with

Plaintiff prior to the proceedings. Approximately an hour after the scheduled hearing time, Clark exited the courtroom and handed Jeremy the finalized plea agreement, which he stated contained all required signatures. Plaintiff was informed that the ankle monitor would be removed and that all of his seized property would be returned as part of the deal.

42. Plaintiff never entered the courtroom and had no interaction with Judge, Jeffrey Griffith or Prosecutor William Archer Jr. Clark stated that the agreement had been amended in Plaintiff's favor, limiting the ban to ODNR parks within Vinton County. The documents indicated a $100 fine for a driving under suspension charge and unspecified court costs, but did not itemize amounts or clearly organize the charges and corresponding penalties. Several pages were unnumbered and disorganized, and Plaintiff's signature appeared to have been crossed out on multiple pages—raising questions as to the validity of the agreement. Neither Clark nor Griffith advised Plaintiff that the order was appealable.
43. It was not until **January 2025** that Plaintiff, while independently researching legal procedures, discovered the order contained the phrase "This is an appealable order." Plaintiff remains uncertain whether this applied only to the driving-related charges or to all aspects of the case. He also learned that the appeal period had expired 30 days after conviction unless ineffective assistance of counsel could be shown, which he asserts is applicable.
44. Plaintiff intended to raise multiple issues during the hearing, including the ongoing deprivation of his property—particularly his religious items—yet was never permitted into the courtroom. Plaintiff felt coerced into accepting the plea under the cumulative pressure of property deprivation, legal misrepresentation, and failure by Officers Tilton, Remy, and Thompson to facilitate the return of his property. Clark further suggested in emails that Plaintiff's property would not be returned unless the plea was signed, reinforcing the coercive nature of the proceedings. These circumstances led Plaintiff to conclude that his rights were violated and that the plea was obtained through improper leverage and duress. **Refer to August 8, 2023 communications and plea documents as evidence.**
45. On **December 12, 2024**, Plaintiff Jeremy Spencer submitted a public records request via email under the **Freedom of Information Act (FOIA)** and **Ohio Public Records Act, R.C. 149.43** to the Vinton County Court, but received no response. On **January 9, 2025**, Plaintiff renewed his request and expanded it to include the **Vinton County Clerk**, **ODNR**, **Vinton County Sheriff's Department**, **Southeastern Ohio Regional Jail**, and the **Vinton County Prosecutor's Office**. Several of these entities responded, and Plaintiff received information that should have been disclosed by his attorney John Clark through discovery but was not.
46. Among the documents obtained was a warrant submitted the day after Plaintiff's arrest, accompanied by a "complaint" authored by Officer Nichole Tilton. The complaint was not sworn under oath and contained vague constitutional language such as, "The offense is contrary to the form of the statute… and against the peace and dignity of the laws of the state of Ohio." Had this information been disclosed at arraignment or during discovery, Plaintiff would have sought clarification and challenged the inaccuracies, contradictions, and falsehoods in the officer's reports through attorney correspondence or pretrial motions.
47. Deputy Clerk **Shelly Reynolds**, who handled Plaintiff's records request, acknowledged that she forwarded Jeremy's file to "Judge" **Jeffrey Griffith** for review to determine what should be released. However, no legal justification was provided for the withholding or redaction of key documents. On **February 18, 2025**, Plaintiff submitted a revised and more precisely worded request, citing specific statutory provisions. As of **March 22, 2025**, Reynolds has not responded appropriately in accordance with the law. Jeremy sent a second request for

Documents on **May 6th, on June 9th** Jeremy has yet to receive proper replay in accordance with the law.

48. The following documents remain unlawfully withheld: ticket or citation, original or amended warrant applications, docket entries, certificate of summons forms, verified complaints under oath, affidavits, and filings submitted by either Plaintiff or attorney John Clark. These omissions raise serious due process concerns and further demonstrate the pattern of obstruction and deprivation of legal rights affecting Plaintiff's ability to prepare an adequate defense.
49. **June 17th and 26th** Jeremy submitted via FAX, e-mail, and Certified mail, a statement receding his guilty plea, necessary documents for a Delayed appeal, along with notice of void judgment due to constitutional violation, judicial misconduct and procedural errors which amount to fraud upon the court. Additionally, Jeremy filed for a recusal of the judge, another Records request about a possible open warrant, the judges and prosecutors Oath and bond, and notice of open records request violation for the past submissions which have been ignored and not properly responded to.
50. **June 30th 2025,** Jeremy has not received any proper response from the court clerk in regard to his open records request. Jeremy has concerns for proper due process as the clerk of common pleas, named Jeremiah Griffith is the son of Jeffery Griffith whom is the person I seek relieve from. Its vary likely Jeremiah Griffith could delay, hinder, obstruct, and deny Jeremy Spencer of his right to public information, redress of grievances, access to appeal, and due process. Additionally upon sending copies of my appeal to the prosecutor the assistant prosecutor Mandy Miller sent in e-mail and phone call stated "Your criminal case was dismissed in its entirety. No plea was entered to withdraw. Further the judgment entry from August 8, 2024, orders that all of your belongings be returned to you." Due to the amount of confusion, procedural issues, and deception throughout the case—combined with contradictory statements from court officials and the persistent failure respond to open records request—Plaintiff believes the integrity of the court's record-keeping and the legitimacy of any judicial outcome is fundamentally compromised; perpetuating fraud upon the court.
51. **July 3ed** Jeremy Spencer filed a writ of mandamus in Ohio supreme court upon Shelley Reynolds in regard to he failure to respond of the multiple open records request.

## IV. Cause for action U.S. Constitutional violations

**Count 1: Violation of 42 U.S.C. § 1983**
**(Violation of the First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution – Joint Action with State Actors)**

Plaintiff incorporates by reference all prior paragraphs as though fully restated herein.

1. Although Defendant John Clark was privately retained, he is liable under 42 U.S.C. § 1983 because he acted under color of state law by willfully participating in, substantially cooperating with, and enabling unconstitutional conduct committed by state officials. A

private individual may be held liable under § 1983 when they act jointly with state actors or their actions are intertwined with governmental policies or functions.

2. Clark's actions occurred in tandem with Jeffrey Griffith and Prosecutor William Archer Jr., including but not limited to: failing to object to due process violations, enabling judicial misconduct, and using his role as legal counsel to suppress Plaintiff's exercise of constitutional rights.

3. Specifically, Clark facilitated the continued unlawful seizure and withholding of Plaintiff's religious property. He acknowledged the religious significance of the items in open court, yet failed to demand their return or object when the court dismissed his motion without ruling (¶16–¶18, ¶23–¶26, ¶38, ¶44). Instead, Clark allowed the return of religious items to be treated as contingent upon Plaintiff's acceptance of a plea agreement, thereby enabling the state's coercive use of property to pressure Plaintiff into waiving his rights.

4. Clark also knowingly permitted the court to accept a plea agreement without conducting a proper judicial colloquy, despite Plaintiff's confusion, emotional distress, and use of qualifying language such as "under duress" and "without prejudice" (¶34, ¶35, ¶37, ¶41–¶42). Rather than intervene, Clark dismissed Plaintiff's concerns, threatened to withdraw, and misled Plaintiff into believing his signature language would invalidate the plea, contributing to the coercion.

5. Furthermore, Clark misrepresented that proper service had been completed, despite Plaintiff never receiving a summons or complaint (¶25, ¶44, ¶48). Clark failed to demand proof of service or seek dismissal for defective service, thereby enabling the court to proceed in violation of due process.

6. Clark further misrepresented key legal rights and suppressed material facts, including the right to appeal, the legal meaning of territorial bans in the plea, and the existence of exculpatory discovery (¶27–¶29, ¶31–¶33, ¶36, ¶39, ¶43). His conduct obstructed Plaintiff's ability to make informed legal decisions and denied meaningful access to the courts.

7. As officers of the court and public officials acting under color of law, Defendants Griffith, Archer, Reynolds, and Clark each had an affirmative legal duty to recognize, safeguard, and uphold Plaintiff's clearly established constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Each Defendant—Griffith, Archer, Reynolds, and Clark—acting individually and jointly under color of law, caused the deprivation of Plaintiff's clearly established constitutional rights, including:

a. The First Amendment, by withholding religious property and interfering with Plaintiff's free exercise of religion (¶16–¶18, ¶23–¶26, ¶38, ¶44);
b. The Second Amendment, by retaining lawfully owned firearms after dismissal of charges (¶16–¶17, ¶22);
c. The Fourth and Fifth Amendments, by seizing and retaining personal property without due process or compensation (¶14–¶17, ¶19–¶21, ¶46, ¶48);
d. The Fifth and Fourteenth Amendments, by denying Plaintiff notice, access to evidence, and due process during arraignment and plea proceedings (¶1, ¶3, ¶11–¶13, ¶25, ¶34–¶35, ¶43–¶44);
e. The Sixth Amendment, by depriving Plaintiff of effective assistance of counsel and meaningful participation in plea negotiations (¶11–¶14, ¶27–¶29, ¶31–¶35, ¶41–¶44);
f. The Eighth Amendment, by imposing excessive bail and leveraging plea agreement terms through coercion (¶4, ¶7–¶9, ¶34, ¶42);
g. The Fourteenth Amendment Equal Protection Clause, by selectively withholding court records and applying procedures in an inconsistent and discriminatory manner (¶45–¶48).

8. These violations were the direct and foreseeable result of deliberate, reckless, or grossly negligent actions by the named Defendants, taken under color of state law and in furtherance of a pattern of constitutional disregard.

9. Defendants obstructed Plaintiff's post-judgment access to redress by ignoring properly submitted motions and delaying confirmation of filings, despite repeated submissions as of ¶49–¶50.

10. As a result of the foregoing, Plaintiff seeks compensatory and punitive damages against Defendants in their individual capacities and requests declaratory and injunctive relief against Defendants in their official capacities pursuant to 42 U.S.C. § 1983.

**Count 2: Violation of 42 U.S.C. § 1985(2)–(3)**
**(Conspiracy to Interfere with Civil Rights – Obstruction of Justice and Deprivation of Equal Protection and Religious Freedom)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully restated herein.

2. Defendants John Clark, Jeffrey Griffith, William L. Archer Jr., and Shelley Reynolds conspired, while acting under color of state law, to obstruct justice and deprive Plaintiff of equal protection and the free exercise of religion, in violation of 42 U.S.C. § 1985(2)–(3). Each Defendant named herein had a legal duty not only to refrain from conspiring to violate Plaintiff's rights, but also to affirmatively protect his access to justice, due process, and equal

protection under the law. Their failure to do so—and their participation in coordinated efforts to undermine those rights—violated that duty.

3. Plaintiff is a practicing adherent of Native American spiritual traditions and thus a member of a protected class under federal civil rights law. On May 30, 2023, during Plaintiff's second court appearance, attorney John Clark made a verbal motion stating on the record that Plaintiff's seized property included items of religious significance related to Plaintiff's Native American beliefs (¶16). This created judicial notice to both Griffith and Archer.

4. Despite this official notice, neither Griffith nor Archer took steps to confirm the religious character of the property, secure its return, or halt its continued deprivation. Instead, Griffith mischaracterized the religious property as a firearm and made no ruling. Archer minimized the inventory of seized items, and Clark failed to correct the record or insist on judicial review (¶16–¶18).

5. Subsequent communications from Clark demonstrated that return of Plaintiff's religious property was explicitly or implicitly conditioned on acceptance of a guilty plea (¶23–¶26, ¶38, ¶44). When Plaintiff added the qualifiers "under duress" and "without prejudice" to his plea paperwork, Griffith and Archer refused to accept it. Clark acknowledged this refusal and failed to object, thereby enabling the continued use of Plaintiff's sacred property as a coercive tool (¶34–¶35, ¶37, ¶42–¶44).

6. Reynolds later obstructed Plaintiff's access to public records related to court filings, warrants, and complaints—including documents critical to confirming whether proper service had occurred or whether motions were filed—despite Plaintiff's properly submitted FOIA and R.C. 149.43 requests (¶45–¶48). Her delay and selective release of information aided in concealing the procedural irregularities surrounding the religious property and prosecution.

7. These coordinated acts—including Clark discouraging Plaintiff's legal questions (¶27–¶29), threatening withdrawal (¶36), and falsely assuring Plaintiff that discovery and service issues were resolved (¶25, ¶44)—constitute overt actions in furtherance of a conspiracy to intimidate, deceive, and silence Plaintiff in violation of § 1985(2) (obstruction of justice) and § 1985(3) (deprivation of equal protection and free exercise of religion).

8. The conspiracy was motivated, in part, by discriminatory animus toward Plaintiff's Native American beliefs and was implemented with knowledge that the conduct would violate Plaintiff's rights under the First and Fourteenth Amendments. Plaintiff's access to the courts was obstructed, his spiritual liberty denied, and his constitutional defenses suppressed.

9. As a direct and proximate result of this conspiracy, Plaintiff suffered coerced plea entry, continued deprivation of religious property, emotional and spiritual distress, and denial of equal protection and due process under law.

10. While the accusations are conservatively framed to include negligence and ineffective assistance by Clark, the facts support a finding that Clark was a knowing and intentional participant in the unlawful scheme. Plaintiff asserts that Clark acted in concert with Griffith, Archer, and Reynolds and is fully liable under 42 U.S.C. § 1985(3) as a co-conspirator.

11. Plaintiff therefore seeks declaratory and monetary relief against all Defendants under 42 U.S.C. § 1985.

**Count 3: Violation of 42 U.S.C. § 1986**
**(Neglect to Prevent a Conspiracy to Interfere with Civil Rights)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully restated herein.

2. Defendant John Clark, while acting under color of law as retained counsel, had actual knowledge of a conspiracy among Jeffrey Griffith, William L. Archer Jr., and Shelley Reynolds to deprive Plaintiff of constitutional rights, including the free exercise of religion, due process, and protection against coerced plea agreements. Despite having the authority and opportunity to intervene, Clark failed to take meaningful action to prevent or mitigate the harm caused by the conspiracy.

3. Clark's professional and constitutional obligations as legal counsel required him to take action to prevent the ongoing conspiracy once he had actual knowledge of it. His neglect of that duty, despite the legal authority and opportunity to intervene, directly enabled continued violations of Plaintiff's rights.

4. On May 30, 2023, Clark informed the court on the record that Plaintiff's seized property included religious items of Native American significance (¶16). This constituted formal notice to Griffith and Archer. Despite their failure to act—Griffith dismissing the motion without ruling and Archer minimizing the property inventory—Clark took no further steps to advocate for Plaintiff's rights (¶16–¶18, ¶23–¶26). He did not submit written motions, press the issue further in court, or file supporting documentation (¶23, ¶24, ¶27).

5. Clark had actual knowledge that the religious property was being unlawfully leveraged to coerce Plaintiff into a guilty plea (¶38, ¶44). He acknowledged that the court refused to accept Plaintiff's plea paperwork due to qualifying language such as "under duress" and "without prejudice" (¶34–¶35, ¶37, ¶42). Rather than object to this unconstitutional

conditioning or seek judicial relief, Clark discouraged legal inquiries, threatened to withdraw from representation (¶36), and falsely claimed that objections regarding service and property were resolved (¶25, ¶44).

6. Clark was uniquely positioned to prevent or limit the ongoing conspiracy under § 1985 by objecting on the record, filing motions, or reporting misconduct to appropriate authorities. Despite this power, Clark failed to take any such steps. His omissions enabled continued violations of Plaintiff's First, Second, and Fourteenth Amendment rights, including the unlawful seizure of religious property and firearms, suppression of legal defenses, and coerced waiver of fundamental rights (¶16–¶18, ¶23–¶27, ¶34–¶36, ¶42–¶44, ¶46).

7. Under 42 U.S.C. § 1986, any person with actual knowledge of a conspiracy described in § 1985 who has the power to prevent or mitigate it and willfully fails to act is civilly liable for the resulting harm. Clark's neglect to prevent the known conspiracy, despite his ethical and legal obligations, directly resulted in Plaintiff's emotional, spiritual, and legal injury, including the deprivation of sacred property, coerced plea, and denial of meaningful access to the courts (¶44, ¶46, ¶49).

8. Plaintiff therefore seeks declaratory and monetary relief against Defendant John Clark under 42 U.S.C. § 1986.

**Count 4: Violation of the United States Constitution Article III § 2**

The State of Ohio was the named party initiating action against Plaintiff Jeremy Spencer in the underlying criminal proceedings held in a county-level court before Jeffrey Griffith. However, the matter was not presented in the Supreme Court, nor initiated in a manner consistent with Article III's jurisdictional limitations. Because the State itself brought the action, the lower court lacked original jurisdiction as properly reserved for the Supreme Court in cases involving a State as a party. Further, systemic procedural failures — including failure to notify Jeremy of the hearing type (¶13), lack of judicial colloquy (¶3, ¶45), excessive bail (¶4), and coercion via withheld property (¶14, ¶19–¶21, ¶43, ¶49–¶50) — void the court's subject-matter and personal jurisdiction.

Any judgment or plea agreement arising from these proceedings is therefore null and void ab initio, or voidable due to constitutional violations.

Pursuant to Article III, Section 2, Clause 1 of the United States Constitution, the judicial power of the United States shall extend to all cases in law and equity arising under the Constitution and laws of the United States, and in all cases in which a State shall be party, the Supreme Court shall have original jurisdiction. In this matter, the State of Ohio was the named party initiating action through Prosecutor William L. Archer Jr. against Plaintiff Jeremy Spencer,

as reflected in the underlying criminal proceedings held in a county-level court before Jeffrey Griffith.

However, the case was not presented in the Supreme Court, nor was it initiated in a manner consistent with Article III's jurisdictional limitations. Because the matter was brought by the State of Ohio itself, and not merely prosecuted on behalf of an injured individual or entity, the lower court lacked original jurisdiction as properly reserved for the Supreme Court in cases involving a State as a party. The county-level court therefore acted outside its constitutional scope by presiding over a matter it lacked authority to adjudicate under federal constitutional law.

Moreover, significant procedural failures—including failure to notify Jeremy of the hearing type (¶13), lack of judicial colloquy to determine competence (¶3, ¶45), imposition of excessive bail (¶4), and unlawful coercion involving withheld property (¶14, ¶19–¶21, ¶43, ¶49–¶50)—further erode the presumption of lawful jurisdiction. The court's actions lacked both subject-matter and personal jurisdiction, as Jeremy was neither adequately informed of his rights nor afforded due process under either federal or state constitutional standards.

Therefore, any judgment or plea agreement arising from these proceedings is null and void ab initio, and/or voidable due to constitutional violations, and the court must vacate, void ab initio the judgment on grounds that the trial court lacked jurisdiction to adjudicate the matter.

**Count 5: Lack of Jurisdiction – Void Judgment Due to Absence of Subject-Matter and Personal Jurisdiction**

A) Plaintiff alleges that the judgment and plea agreement accepted by the Vinton County Court are void ab initio and or voidable due to constitutional violations due to the court's lack of both subject-matter jurisdiction and personal jurisdiction. On May 2nd, 2023, while in custody at Southeastern Ohio Regional Jail, Plaintiff was allegedly arraigned before Jeffrey Griffith (¶1). At no point was Plaintiff informed of the identity of the charging party, allowed to review the complaint, or advised of the legal basis of the allegations. Under these conditions, Plaintiff reluctantly entered a plea of not guilty without sufficient understanding of the charges or their legal implications (¶1, ¶3, ¶27). Plaintiff further asserts that due to these procedural defects and Griffith's failure to assess his mental fitness to participate in court proceedings, the court lacked jurisdiction over his person and the case (¶3). No judicial colloquy was conducted to determine Plaintiff's competence or comprehension, and no due process protections were afforded to validate the arraignment or subsequent proceedings (¶3, ¶45).

B) Furthermore, Plaintiff challenges the court's jurisdiction under Article III, Section 2 of the United States Constitution, which vests original jurisdiction over cases involving a State as a party in the federal judiciary. In this case, the action was initiated by the State of Ohio, with

the prosecution proceeding under the State's name and authority, implicating Article III's jurisdictional boundaries. The county-level court lacked constitutional authority to issue judgment where no proper plea was entered, no competent waiver was established, and no lawful jurisdiction had been secured under either state or federal law.

C) Additionally, the court accepted and enforced a plea agreement without Plaintiff's physical presence and without conducting an on-the-record colloquy to confirm that the plea was entered knowingly, voluntarily, and intelligently (¶45, ¶54–55). These procedural violations deprived the court of jurisdiction over both the case and the person. As such, the resulting conviction, fines, conditions, and restrictions were entered without legal authority, and must be declared void as a matter of law and vacated in full.

*[Note Regarding Counts 4 and 5:*

*Although Counts 4 and 5 both argue that the court lacked jurisdiction, they rely on different legal grounds. Count 4 challenges the court's authority under Article III, Section 2, based on the structural limitation that only the Supreme Court may hear cases where a State is a named party. Count 5, by contrast, focuses on procedural due process violations—such as lack of notice, judicial inquiry, or valid plea—that made jurisdiction improper in this specific case. The counts are distinct in theory, though similar in conclusion.]*

**Count 6: Violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments (Due Process, Effective Assistance of Counsel, Excessive Bail, and Substantive Liberty Deprivations)**

1. Plaintiff incorporates by reference all preceding paragraphs as though fully restated herein.

2. Defendants Griffith, Archer, Clark, and Reynolds violated Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments by depriving him of both substantive and procedural due process. At Plaintiff's initial appearance on May 2, 2023, no inquiry was made into his cognitive state, rest, medical condition, or sobriety, in light of his recent incarceration and known medical distress (¶3). This failure to assess Plaintiff's capacity undermined the legitimacy of the first proceeding that day.

3. Throughout the legal process, Defendant Clark, Archer, and Griffith failed to provide Plaintiff with proper notice of the nature of hearings, judicial colloquy, or adequate explanation of rights and consequences (¶13, ¶26, ¶31–¶35, ¶43–¶45). A court hearing was conducted by phone rather than video or in person, depriving Plaintiff of private attorney-client consultation and meaningful participation (¶31–¶33). Plea documents were disorganized, incomplete, and altered (¶42, ¶46), and no clear waiver of rights was confirmed on record (¶45).

4. Plaintiff never received proper service of summons or complaint, yet proceedings were permitted to move forward without proof of service or objections from Clark (¶25, ¶44, ¶48). Clark falsely assured Plaintiff that service had been completed and enabled the prosecution to proceed on defective or missing documentation (¶25, ¶43–¶44).

5. Clark's actions constituted a violation of the Sixth Amendment by depriving Plaintiff of effective assistance of counsel. Clark failed to adequately explain the discovery process and rights, withheld and/or failed to obtain relevant legal materials, provided misleading or dismissive advice regarding plea consequences, failed to raise proper objections, and repeatedly discouraged Plaintiff from asserting legal defenses (¶12–¶14, ¶27–¶29, ¶31–¶33, ¶36, ¶39, ¶42–¶44).

6. The court imposed an arbitrary $50,000 bail on May 2, 2023, without justification to the charges at issue, which constituted an excessive fine and violated the Eighth Amendment (¶4). The conditions of release, including a contract for an ankle monitor, were imposed while Plaintiff was under duress and not voluntarily agreed to (¶7–¶9, ¶34–¶35).

7. The Fifth Amendment Takings Clause was violated when Defendants Clark, Archer and Griffith continued to withhold Plaintiff's religious property and "arms" after dismissal of related charges. Despite motions and judicial notice, neither Griffith nor Archer ordered the return of the items, and Clark failed to follow up (¶14–¶19, ¶21, ¶23–¶26, ¶44, ¶46, ¶49).

8. Plaintiff's First Amendment rights were also violated. Defendants Clark, Archer and Griffith knowingly withheld items of religious significance, despite acknowledgment on record of their sacred nature (¶16–¶18, ¶23, ¶26). Griffith failed to act sua sponte, Archer misrepresented the property, and Clark failed to press for their return. This prolonged interference with Plaintiff's spiritual practice imposed a substantial burden on religious freedom (¶38, ¶44).

9. Further, Plaintiff's Second Amendment rights were violated when Defendants continued to retain lawfully owned "arms" after dismissal of the weapons charge (¶14–¶15, ¶19, ¶22). No court order justified continued retention, and Plaintiff was denied his right to keep and bear arms.

10. Plaintiff asserts these cumulative actions taken by Defendants Clark, Archer, and Griffith—failure to assess competency, deny procedural safeguards, impose excessive bail, retain property unlawfully, and interfere with religious and self-defense rights—represent a coordinated pattern of constitutional deprivations and violations committed under color of law, exceeding outside the scope of Defendants' lawful authority and duties. As such,

Defendants are jointly and severally liable under the Fifth, Sixth, Eighth, and Fourteenth Amendments for due process violations, excessive bail, and liberty infringements.

**Count 7: Violation of 42 U.S.C. § 2000bb–1 – Free Exercise of Religion**

Griffith and Archer substantially burdened Jeremy's religious exercise without a compelling governmental interest, violating 42 U.S. Code § 2000bb–1(a) (¶20–¶21). Griffith, acting under the color of law, failed to ensure the return of Jeremy's religious property, thereby restricting his ability to practice his faith (¶23, ¶25). Archer, as the prosecutor, had the authority to release the seized religious property after the dismissal of charges but failed to do so, further violating 42 U.S. Code § 2000bb–1(b) (¶24).

The government may only burden religious exercise if it demonstrates that the restriction is both (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of furthering that interest (42 U.S. Code § 2000bb–1(b)). However, Griffith and Archer failed to provide any justification for withholding Jeremy's religious property, violating both prongs of this test (¶23–¶24). The continued deprivation of Jeremy's religious items was not necessary for any legitimate government function and was done without a lawful purpose, directly contradicting 42 U.S. Code § 2000bb–1(c) (¶25).

Griffith's failure to intervene despite his judicial responsibility, combined with Archer's refusal to rectify the deprivation, demonstrates a clear and intentional violation of Jeremy's religious rights under 42 U.S. Code § 2000bb–1 (¶26–¶27).

**Count 8: Civil Liability for Criminal Acts – Ohio Revised Code § 2307.60(A)(1)(Criminal Acts Committed Under Color of Law – Coercion, Extortion, Theft, Interference with Civil Rights, and Related Offenses)**

1. Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.
2. Pursuant to Ohio Revised Code § 2307.60(A)(1), any person injured by a criminal act may recover full damages in a civil action. Plaintiff alleges that Defendants Jeffrey Griffith, Prosecutor William L. Archer Jr., Attorney John Clark Jr., and Clerk Shelley Reynolds—while acting under color of state law and in their official or professional capacities—committed one or more criminal acts under Ohio law that directly resulted in injury to Plaintiff's liberty, property, and civil rights.
3. The criminal acts giving rise to civil liability under ORC § 2307.60 include, but are not limited to:

   A) ORC § 2905.12 – Coercion: Defendants Griffith, Archer, and Clark used Plaintiff's property to coerce a guilty plea by delaying its return, despite knowing the property was no longer needed as evidence (¶14–¶15, ¶21, ¶40–¶42).

B) ORC § 2905.11 – Extortion: Defendants Griffith, Archer, and Clark conditioned the return of Plaintiff's property on his signing of a plea agreement, as reflected in Clark's communications (¶21, ¶43–¶44, ¶49–¶50).

C) ORC § 2913.02 – Theft: Defendants Griffith and Archer unlawfully retained control over Plaintiff's personal and religious property without legal authority (¶14–¶15, ¶17–¶21, ¶43–¶44).

D) ORC § 2921.45 – Interference with Civil Rights: Defendants Griffith and Archer deprived Plaintiff of due process, religious liberty, and access to property under color of law (¶15–¶18, ¶20–¶21, ¶43–¶44).

E) ORC § 2923.01 – Criminal Conspiracy: Defendants Griffith, Archer, Clark, and Reynolds engaged in a coordinated scheme to suppress Plaintiff's rights, delay hearings, and obstruct legal remedies (¶15–¶22, ¶43–¶44, ¶49–¶50).

F) ORC § 2923.03 – Complicity: Defendant Clark aided and abetted misconduct by state officials through inaction, misinformation, and professional neglect (¶12–¶16, ¶36–¶37).

G) ORC § 2921.32 – Obstructing Justice: Defendant Clark obstructed Plaintiff's access to legal redress through procedural delays, misleading advice, and failure to act on known violations (¶25, ¶36–¶37).

H) ORC § 2921.13(A)(7) – Falsification: Defendants Archer and Clark knowingly misrepresented or failed to correct key facts during official proceedings, including the scope of seized property (¶17, ¶21).

I) ORC § 2933.27 – Unlawful Retention of Seized Property: Defendants Griffith and Archer retained Plaintiff's property after it was no longer needed for prosecution (¶14–¶15, ¶19–¶21, ¶43).

J) ORC § 2945.71(C)(1) and § 2937.10 – Delay of Preliminary Hearing: Defendant Griffith failed to provide Plaintiff a timely preliminary hearing as required by law (¶1–¶7, ¶13).

K) ORC § 2945.37(G) – Competency Inquiry: Defendant Griffith failed to evaluate Plaintiff's mental fitness despite visible signs of duress and confusion (¶3, ¶45).

L) ORC § 2945.79(A) – Irregular Proceedings: Defendant Griffith engaged in irregular procedures including excessive bail, improper hearing formats, and failure to notify Plaintiff of his rights (¶4, ¶13, ¶31–¶34, ¶45, ¶49–¶50).

M) ORC § 2981.11 – Custodial Care of Property: Defendants Griffith and Archer failed to return Plaintiff's property after its relevance to prosecution ended (¶14–¶15, ¶17, ¶19–¶21, ¶43).

N) ORC § 149.43(B)(1), (3) – Public Records Act: Defendants Reynolds and Griffith denied Plaintiff access to public records despite valid requests, obstructing Plaintiff's right to review legal documentation (¶49–¶50). As alleged in ¶49–¶50, the Vinton County Clerk's Office failed to respond to public records requests in violation of ORC § 149.43(B), further impairing Plaintiff's right to access information necessary to seek legal redress.

4. These statutory violations caused Plaintiff substantial injury, including unlawful deprivation of property, coerced plea entry, emotional and spiritual harm, obstruction of access to courts, and infringement of religious freedom and due process rights.

5. A criminal conviction is not required to recover under ORC § 2307.60. Plaintiff need only establish that it is more likely than not that the Defendants' conduct constituted a criminal offense. This standard is satisfied through direct evidence, communications, coordinated omissions, and procedural misconduct.

6. Accordingly, Plaintiff seeks compensatory and punitive damages against all named Defendants in their individual capacities, as well as declaratory and injunctive relief, and all other remedies this Court deems just and proper under Ohio law.

**Count 9: Violations of the Ohio Code of Judicial Conduct**

1. Plaintiff alleges that Defendant Jeffrey Griffith, acting under color of law and in his capacity as judge, but outside the scope of his duties, of the Vinton County Court, violated multiple provisions of the Ohio Code of Judicial Conduct, including but not limited to Rules 1.1, 1.2, 2.2, 2.5, 2.6, and 2.15. Griffith failed to uphold and apply the law as required under Rule 1.1 by denying Plaintiff due process, declining to conduct a proper judicial colloquy (¶3, ¶45), and allowing coercive plea practices. His conduct undermined public confidence in the impartiality of the judiciary (Rule 1.2) and denied Plaintiff a fair and competent process (Rule 2.5).

2. The judge's refusal to meaningfully hear Plaintiff's concerns, failure to rule on motions, and unwillingness to address withheld religious property violated Rule 2.6. Furthermore, if any plea negotiations or decisions were made outside Plaintiff's knowledge, Rule 2.9 (Ex Parte Communication) may apply. By ignoring ongoing misconduct by other court officials or prosecutors, Griffith also failed his duty under Rule 2.15 to take appropriate action regarding misconduct in the judicial system. These ethical violations, when viewed alongside statutory and constitutional claims, further demonstrate the need for injunctive and declaratory relief, including vacatur of all judicial actions tainted by this misconduct.

**Cause of Action 10 : Fraud Upon the Court**

1. Plaintiff alleges that Jeffrey Griffith, William L. Archer Jr., and Shelley Reynolds knowingly engaged in a pattern of conduct that constitutes fraud upon the court by deliberately introducing false representations, suppressing material facts, and concealing judicial and prosecutorial irregularities for the purpose of securing an unlawful conviction and plea agreement. These acts included the falsification or manipulation of legal records, suppression of exculpatory and material evidence, refusal to return personal property without legal

justification, and alteration or rejection of signed documents submitted by Plaintiff in connection with a purported plea agreement (¶43, ¶44, ¶49).

2. Specifically, Jeffrey Griffith and William L. Archer Jr. misrepresented the contents and implications of the agreement, refused to conduct a proper on-the-record colloquy, and failed to ensure that Plaintiff's acceptance of the plea was voluntary and informed (¶42, ¶44). They accepted or participated in altering Plaintiff's signature and disregarded its qualifying language, then used the altered version to impose consequences while denying Plaintiff the opportunity to contest or clarify his intent. Shelley Reynolds materially contributed by withholding essential judicial records from public access, in violation of Ohio Revised Code § 149.43, thus impairing Plaintiff's ability to challenge the legality of the proceedings and to obtain evidence critical to his appeal and defense (¶50).

3. Further, John Clark Jr.'s repeated failure to object to these practices, his refusal to communicate accurate information, and his complicity in pressuring Plaintiff to sign documents while withholding legal context or recourse contributed to the concealment of fraud and materially assisted the other Defendants. His conduct deprived Plaintiff of meaningful legal assistance and helped enable the fraud to succeed (¶39, ¶44, ¶50).

4. The cumulative effect of these actions resulted in an unlawful deprivation of constitutional rights through manipulation of the judicial process itself. The misconduct rises beyond mere procedural error and constitutes a fraud upon the court, which is not subject to ordinary claim preclusion or immunity doctrines, as it strikes at the integrity of the forum and impairs the impartial administration of justice.

**Cause of Action 11: Violation of Statutory and Constitutional Duties by Local Government Officials**

5. **Count 1:** Denial of Due Process and Fair Trial (U.S. Const. Amend. V & XIV; ORC § 2921.45; 42 U.S.C. § 1983)

6. Defendants Jeffrey Griffith, William L. Archer Jr., John Clark Jr., and Shelley Reynolds violated Plaintiff's due process rights under the U.S. Constitution and Ohio law by conducting irregular proceedings that lacked a proper judicial colloquy (¶3, ¶45), failed to provide notice of the nature of the hearings (¶13), withheld material information, and accepted plea paperwork altered without authorization (¶34–¶35). These actions constitute a denial of equal protection and fair treatment under the law and violate ORC § 2921.45 and 42 U.S.C. § 1983, which provides a remedy for violations of constitutional rights committed under color of state law.

7. **Count 2:** Denial of Access to Public Records and Transparency (ORC § 149.43; ORC § 2921.45; 42 U.S.C. § 1983)

8. Defendants Shelley Reynolds and Jeffrey Griffith violated Ohio's Public Records Act, ORC § 149.43, by failing to respond to repeated public records requests, thereby obstructing Plaintiff's access to public information and impairing his right to legal redress (¶49–¶50). Their conduct also violates ORC § 2921.45 and 42 U.S.C. § 1983 by interfering with Plaintiff's First and Fourteenth Amendment rights under the U.S. Constitution.

9. **Count 3**: Judicial and Prosecutorial Misconduct (U.S. Const. Amend. V, VI, XIV; ORC § 2921.45; ORC § 2923.01; 42 U.S.C. § 1983)

10. Defendants Griffith and Archer manipulated court documents, withheld religious property, denied proper hearing procedures, and attempted to enforce a plea under coercive conditions (¶19–¶21, ¶38, ¶42–¶44). These acts constitute misconduct under color of law and give rise to liability under ORC § 2921.45, ORC § 2923.01, and 42 U.S.C. § 1983.

11. **Count 4:** Breach of Official Duty to Preserve Rights and Maintain Integrity (U.S. Const. Amend. I & XIV; ORC § 2307.60; ORC § 2921.45; 42 U.S.C. § 1983)

12. The refusal of court officials to maintain accurate and complete records, provide transparent access to dockets and pleadings, or respond to valid legal filings undermines judicial integrity and deprives Plaintiff of religious liberty and due process (¶49–¶50). These failures support civil liability under ORC § 2307.60, ORC § 2921.45, and 42 U.S.C. § 1983, which authorizes redress for violations of federal rights committed under color of state law.

## VI. INJURIES / DAMAGES

As a direct and proximate result of the constitutional violations, statutory misconduct, and professional negligence committed by Defendants Jeffrey Griffith, William L. Archer Jr., Attorney John Clark Jr., and Shelley Reynolds, Plaintiff Jeremy Spencer has suffered significant and ongoing harm. These injuries include, but are not limited to:

1. Unlawful and prolonged deprivation of personal property withheld after dismissal of charges and continued with holding  of no evidence property that's religious property,
2. Emotional and psychological distress, including anxiety, trauma, and humiliation caused by coercive legal tactics, manipulated court procedures, and denial of fundamental rights;

3. Infringement of religious freedom, including interference with Plaintiff's ability to practice his faith;
4. Coerced waiver of constitutional rights, including acceptance of a plea agreement under duress, without proper judicial inquiry or informed consent;
5. Denial of due process, including lack of arraignment clarity, failure to receive discovery, lack of notice of hearings, and denial of procedural fairness;
6. Financial harm, including unlawful monitoring fees, attorney expenses, bond costs, fines, and lost income due to house arrest restrictions;
7. Obstruction of access to justice, including delayed or denied access to public records, court filings, and relevant legal materials;
8. Procedural and substantive injury, resulting in a tainted plea, legal uncertainty, and lasting impairment of Plaintiff's access to legal redress.

These injuries, taken together, reflect a pattern of abuse, neglect, and deliberate indifference to Plaintiff's protected rights under the United States Constitution and Ohio law.

## VII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Jeremy Spencer respectfully demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jeremy Spencer respectfully requests that this Court grant the following relief against Defendants, jointly and severally, including but not limited to Judge Jeffrey Griffith, Prosecutor William L. Archer Jr., Attorney John Clark Jr., and Clerk Shelley Reynolds:

**Declaratory Relief**

A. Declare that Defendants' conduct violated Plaintiff's rights under the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

B. Declare that Attorney John Clark Jr. violated his professional duties under the Ohio Rules of Professional Conduct, including Rules 1.1, 1.2, 1.3, 1.4, 3.1, 3.3, 6.2, and 8.4(c);

C. Declare that the continued withholding of Plaintiff's religious property constituted an unlawful infringement of due process and free exercise of religion.

D. Declare that Defendants' conduct—specifically the submission, concealment, or acceptance of materially false information, procedural misrepresentations, and refusal to correct known judicial errors—constituted fraud upon the court, rendering the resulting judgment void ab initio under Rule 60(d)(3), Hazel-Atlas, and the Court's inherent authority.

**Injunctive Relief**

E. Enjoin Defendants from using personal property, custodial control, or procedural ambiguity as leverage to coerce plea agreements in future proceedings;

F. Vacate and declare void ab initio any conviction, plea agreement, or judgment obtained through coercion, misrepresentation, or violation of due process rights;

G. Order the immediate expungement and sealing of the record in cases CRA2400096(A–E) and TRD2301182;

H. Order the removal and permanent deletion of Plaintiff's fingerprints, photographs, biometric data, and other identifying information from any local, state, or federal database, including but not limited to ODNR, SEORJ, Vinton County Sheriff's Office, FBI, ATF, LEADS, and NICS.

I. Enjoin any further enforcement of judgments, plea agreements, or sentencing orders tainted by the fraud, misrepresentation, or unlawful coercion described herein, including those stemming from manipulated court records or withheld information.

**Compensatory Damages**

J. Award compensatory damages in the total amount of $600,000, calculated as $150,000 per Defendant, for:

1. Emotional distress and psychological harm,;
2. Loss of enjoyment of life
3. Unlawful deprivation of liberty and property;
4. Religious infringement and spiritual harm;
5. Legal and monitoring costs;
6. Lost economic opportunities and forced house arrest expenses.
7. Legal costs and unjust outcomes arising from fraudulent judicial process;
8. Loss of trust and systemic prejudice resulting from false court records and intentional obfuscation.

**Punitive Damages**

K. Award punitive damages in the total amount of $1,000,000, assessed as $250,000 per Defendant, to deter future misconduct and punish willful or reckless disregard for constitutional rights.

**Attorneys' Fees and Litigation Costs**

L. Award attorneys' fees and costs of litigation under 42 U.S.C. § 1988 and applicable state law, in an amount to be determined at trial.

**Additional Relief**

M. Award a combined total of no less than $1.6 million in monetary damages, exclusive of fees and equitable relief;

N. Declare the plea agreement and resulting judgment void due to fraud upon the court, and restore Plaintiff to the legal and procedural position he held prior to entry of the coerced plea;
O. Refer Defendant John Clark Jr. for disciplinary review by the Ohio Supreme Court's Office of Disciplinary Counsel for violations of duty, including fraud upon the court and failure to report judicial misconduct under Rule 8.3.
P. Grant such other and further relief as this Court deems just, equitable, and proper under the circumstances.

Regards:

Jeremy Spencer ______________ Date: 7/11/2025

Jeremy Spencer (without prejudice/recourse) (Plaintiff)
Spencerj2121@yahoo.com
330-396-3566
C/O [1891Grovepoint Dr.]
[Florence Ky, 41042]

**CERTIFICATE OF SERVICE**

I, Jeremy Spencer, hereby certify that a true and correct copy of the foregoing Complaint, along with all supporting documents and exhibits, will be served upon the following Defendants in their individual and/or official capacities, via email, to:

**Jeffrey R. Griffith Sr.,, William L. Archer, Jr., Shelley Reynolds**
100 E. Main Street
McArthur, OH 45651
Phone: (740)- 596-4571

**John Clark Jr.**
221 East Main Street
Jackson, OH 45640
Phone:(740) 288-4200

Regards:

Jeremy Spencer ______________ Date: 7/11/2025
Jeremy Spencer (without prejudice/recourse) (Plaintiff)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHREN DISTRICT OF OHIO**
**EASTREN DIVISION**

Jeremy Spencer )
**C/O** [1891 Grovepointe dr. )
Florence Ky 41042] )
**Plaintiff** )
) **Case No:**____________________________
vs. )
)
**Jeffrey R. Griffith Sr.** )
**William L. Archer, Jr.** )
**Shelley Reynolds** )
100 E. Main Street )
McArthur, OH 45651 )
Phone: (740)- 596-4571 )
**John Clark Jr.** )
221 East Main Street )
Jackson, OH 45640 )
Phone:(740) 288-4200 )
**Defendant** )

**Plaintiff's Memorandum - Inapplicability of Immunity to Defendants**
**(Filed in Support of Complaint)**

**Immunity Does Not Apply to Defendants Griffith and Archer**

1. Immunity doctrines, judicial or prosecutorial, do not protect officials who act outside the scope of their jurisdiction or in violation of clearly established constitutional rights. As this Court must recognize, "[i]t is a general rule that an officer, executive, administrative, quasi-judicial, ministerial, or otherwise, who acts outside the scope of his jurisdiction, and without authorization of law may thereby render himself amenable to personal liability in a civil suit." *Cooper v. O'Conner, 69 App. D.C. 100, 99 F.2d 135.*

2. Here, Judge Griffith and Prosecutor Archer acted in clear absence of jurisdiction and with deliberate indifference to Plaintiff Jeremy Spencer's constitutional rights, as detailed in the complaint (¶1–¶48). Among other actions, Griffith failed to conduct a judicial colloquy before accepting a coerced plea (¶34–35, ¶42–45), and both Griffith and Archer knowingly withheld religious property, using it as leverage to compel the plea (¶16–18, ¶23–26, ¶38, ¶44).

3. The acts alleged are not protected by immunity because "[p]ublic officials are not immune from suit when they transcend their lawful authority by invading constitutional rights." *AFLCIO v. Woodard, 406 F.2d 137*. Both Defendants operated far beyond any judicial or prosecutorial discretion when they obstructed due process, ignored procedural safeguards, and violated Plaintiff's First, Fifth, Sixth, and Fourteenth Amendment rights.

4. As the Supreme Court has held, "A municipality has no immunity from liability under § 1983 flowing from its constitutional violations, and may not assert the good faith of its officers as a defense to such liability." *Owen v. City of Independence, 445 U.S. 622, 635–658 (1980)*. If a municipality cannot shield itself behind officer immunity, then its officers—including Griffith and Archer—must also be held accountable. To claim otherwise would be, morally and legally, equivalent to excusing all Nazi officers from war crimes while only punishing Hitler. Such a notion is unconscionable.

5. Additionally, "When enforcing mere statutes, judges of all courts do not act judicially (and thus are not protected by 'qualified' or 'limited immunity')." *Owen v. City, 445 U.S. 662; Bothke v. Terry, 713 F.2d 1404.* Griffith's and Archer's conduct, particularly the enforcement of coercive plea conditions through unauthorized use of Plaintiff's property, was not a judicial function but an unconstitutional abuse of power.

6. Even when a judge performs judicial functions, "judges not only can be sued over their official acts, but could be held liable for injunctive and declaratory relief and attorney's fees." *Lezama v. Justice Court, A025829*. Moreover, under the well-established Ex parte Young exception to Eleventh Amendment immunity, courts in the Sixth Circuit have held that "The Eleventh Amendment does not bar suits for injunctive or declaratory relief against individual state officials brought pursuant to § 1983." *Carten v. Kent State Univ., 282 F.3d 391, 395 (6th Cir. 2002)*; see also *McCormick v. Miami Univ., 693 F.3d 654, 661 (6th Cir. 2012); Diaz v. Mich. Dep't of Corr., 703 F.3d 956, 964 (6th Cir. 2013)*. In this case, Plaintiff seeks precisely such relief for clearly unlawful acts undertaken without jurisdiction and in bad faith (¶3, ¶14–¶21, ¶45, ¶60).

7. Further, "The Civil Rights Act in general, and Sec. 1983 in particular, are cast in terms so broad as to suggest that in suits brought under these sections common law doctrines of immunity can never be a bar." *Jacobsen v. Henne, 355 F.2d 129, 133–34*. In a complementary ruling, the Court in *Monroe v. Pape, 365 U.S. 167 (1961*), held that public officials can be liable under § 1983 even when acting outside the bounds of law, affirming that unauthorized acts still occur 'under color of law' for civil rights liability. Similarly, in *Cooper v. Aaron, 358 U.S. 1 (1958),* the Court emphasized that 'no state legislator or executive or judicial officer

can war against the Constitution without violating his oath,' reaffirming that state officials may not hide behind state authority to justify unconstitutional conduct. *Lucarell v. McNair, 453 F.2d 836 (6th Cir. 1972)*, further holds that 'a judge loses all immunity when he acts in absence of all jurisdiction,' reinforcing that Defendant Griffith's actions fall outside judicial protection. Finally, *Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963*), confirms that state actions even in excess of legal authority still qualify as 'under color of law' for § 1983 purposes. "Public officials' defense of immunity is to be sparingly applied in these kinds of cases." *James v. Ogilvie, 310 F. Supp. 661, 663.*

8. This case illustrates exactly why. Griffith and Archer knowingly and repeatedly violated Plaintiff's rights, used Plaintiff's religious property to coerce him into an unlawful plea, and refused to correct these errors even when placed on judicial notice. These are not mere legal mistakes—they are constitutional violations committed under color of law, and "Everyone will note the statute [42 U.S.C. § 1983] does **NOT** say; 'Every person EXCEPT JUDGES AND GOVERNMENT EMPLOYEES.'" It says "every person."

9. Lastly, "The officers of the law, in the execution of process, are required to know the requirements of the law, and if they mistake them, whether through ignorance or design, and anyone is harmed by their error, they must respond in damages." *Roger v. Marshall, 1 Wall. (U.S.) 644, 17 L.Ed. 714.*
10. That is precisely the case here. Plaintiff was deprived of his liberty, property, and religious freedom by acts committed not just in excess of authority, but in direct defiance of constitutional and statutory law.

11. **WHEREFORE**, Plaintiff respectfully requests that this Court recognize that Defendants Griffith and Archer are not entitled to judicial or prosecutorial immunity in this case; and that their actions, taken outside the scope of lawful jurisdiction and in violation of clearly established constitutional rights, be deemed actionable under 42 U.S.C. § 1983. Plaintiff further prays that the Court allow this Memorandum to stand in support of the Complaint on file and deny any motion or defense asserting immunity as a bar to proceeding.

Regards:

Jeremy Spencer ______________________ Date: 7/11/2025

Jeremy Spencer (man)(without prejudice/recourse)
(Plaintiff)
spencerj2121@yahoo.com
330-396-3566
[c/o 1891Grovepoint Dr.]
[Florance Ky, 41042]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHREN DISTRICT OF OHIO**
**EASTREN DIVISION**

Jeremy Spencer )
**C/O** [1891 Grovepointe dr. )
Florence Ky 41042] )
**Plaintiff** )
) **Case No:**________________________
vs. )
)
**Jeffrey R. Griffith Et.al.** )

## TABLE OF AUTHORITIES

**Cases opinions**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........................................................ p. 5
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ............................... p. 5
Crawford-El v. Britton, 523 U.S. 574 (1998) .......................................... p. 5
Ex parte Young, 209 U.S. 123 (1908) ..................................................... p. 6
Gomez v. Toledo, 446 U.S. 635 (1980) ..................................................... p. 5
Imbler v. Pachtman, 424 U.S. 409 (1976) ............................................. p. 2
Johnson v. Jones, 515 U.S. 304 (1995) .................................................... p. 5
Pierson v. Ray, 386 U.S. 547 (1967) .......................................................... p. 2
Stump v. Sparkman, 435 U.S. 349 (1978) ............................................... p. 2
Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) ................................. p. 5

**Statutes and Constitutional Provisions –**

42 U.S.C. § 1983 ......................................................................................... p. 6
U.S. Const. art. I, § 1 ................................................................................. p. 2
U.S. Const. art. VI, cl. 2 (Supremacy Clause) .......................................... p. 6
U.S. Const. amends. V and XIV ................................................................ p. 5

**Founding-Era and Historical Documents –**

Declaration of Independence (1776) ............................................. ...p. 5, 6
Federalist No. 10 (Madison) .................................................................... p. 5
Federalist No. 46 (Madison) .................................................................... p. 5
Federalist No. 51 (Madison) .................................................................... p. 5
Federalist No. 78 (Hamilton) ................................................................. p. 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHREN DISTRICT OF OHIO**
**EASTREN DIVISION**

Jeremy Spencer )
**C/O** [1891 Grovepointe dr. )
Florence Ky 41042] )
**Plaintiff** )
) **Case No:**______________________
vs. )
)
**Jeffrey R. Griffith** )
**William L. Archer, Jr.** )
**Shelley Reynolds** )
100 E. Main Street )
McArthur, OH 45651 )
Phone: (740)- 596-4571 )
**John Clark Jr.** )
221 East Main Street )
Jackson, OH 45640 )
Phone:(740) 288-4200 )
**Defendant** )

**NOTICE OF MEMORANDUM**
**CONSTITUTIONAL TREASON: THE RISE OF IMMUNITY AND FALL OF JUSTICE**

(in general)

## I. INTRODUCTION

This memorandum challenges the legitimacy, constitutionality, and ethical basis of doctrines such as qualified immunity, judicial immunity, prosecutorial immunity, and absolute immunity as they are presently applied to shield public officials from civil accountability. These doctrines were not enacted by the people through any democratic process, statute, or constitutional provision. Instead, they were crafted and sustained by the judiciary itself—specifically, by members of the legal profession who share membership in the American Bar Association—an exclusive fraternity, also described by critics as an organized crime syndicate—that specializes in executing law through their own "interpretation" and "discretion," which can be manipulated to protect their own members, maintain power, and evade accountability to the public.

## II. LACK OF DEMOCRATIC OR STATUTORY ORIGIN

There exists no statute, no code, and no constitutional amendment that was passed by the people or their elected representatives which explicitly grants public officials the protections of qualified, judicial, or absolute immunity. These doctrines were not debated in legislative chambers nor placed before the electorate for ratification. Instead, they originated entirely within the judiciary—an unelected branch of government—through case law precedents. The most well-known examples include Pierson v. Ray (1967) for qualified immunity, Stump v. Sparkman (1978) for judicial immunity, and Imbler v. Pachtman (1976) for prosecutorial immunity.

## III. JUDICIAL SELF-DEALING AND INHERENT CONFLICT OF INTEREST

These immunity doctrines amount to judicial self-dealing. They were developed and upheld by judges, for judges, prosecutors, law enforcement, and other government actors—most of whom belong to the same professional and institutional fraternity: the Bar and or associated fraternities. This creates a structural and moral conflict of interest wherein members of a legally privileged class have granted themselves legal invincibility, circumventing accountability to the very public they serve.

## IV. UNCONSTITUTIONAL CREATION OF LAW BY THE JUDICIARY

Under Article I, Section 1 of the United States Constitution, all legislative power is vested in Congress. Nowhere in the Constitution is the judiciary granted authority to create legal doctrines with the force and effect of law—especially those that abrogate individual rights or shield state actors from liability. By creating and expanding immunity doctrines, the courts have arrogated to themselves powers reserved to the people and their elected legislators. This represents a direct violation of the constitutional separation of powers.

## V. DUE PROCESS AND THE SUBVERSION OF JUSTICE

It is further a miscarriage of justice when higher court judges dismiss civil rights complaints at the earliest stage—before discovery or the submission of evidence—based solely on the face of the complaint. Such dismissals reflect bias and prejudice against plaintiffs seeking redress for harms suffered, particularly when the conduct occurred outside the official or judicial capacity of the defendant. By denying the opportunity to develop the factual record, courts prematurely foreclose valid claims, elevate form over substance, and insulate unlawful actions from accountability under the pretense of immunity.

The improper dismissal of civil rights complaints at the pleading stage has been criticized and limited by Supreme Court precedent. In Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002),

the Court held that a complaint need only give fair notice of the claim and rely on discovery to develop the factual record. The Court emphasized that premature dismissal violates Rule 8 and undermines the liberal notice pleading standard. Similarly, in Gomez v. Toledo, 446 U.S. 635 (1980), the Court made clear that immunity is an affirmative defense, not a pleading requirement—meaning courts should not presume immunity before facts are established. Crawford-El v. Britton, 523 U.S. 574 (1998), further reinforces that civil rights plaintiffs are not subject to heightened pleading standards, especially where unconstitutional motives or conduct outside official capacity are alleged.

The applicability of Johnson v. Jones, 515 U.S. 304 (1995), also supports the proposition that factual disputes must be resolved before immunity can be properly assessed, underscoring the necessity of allowing discovery. While Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), introduced a plausibility standard, they do not authorize dismissal where well-pleaded facts—if proven—could support liability. Immunity-based dismissals at the complaint stage are thus not only premature but constitutionally suspect, particularly where the plaintiff alleges actions outside the scope of lawful authority.

By denying redress to those harmed by government officials (when acting under color of law), these immunities violate the core due process guarantees of the Fifth and Fourteenth Amendments. People are entitled to access the courts to seek remedy for violations of their rights. Immunity doctrines arbitrarily bar that access and deny them meaningful opportunity to be heard—not because the claim lacks merit, but because simply of who the defendant is. This is incompatible with the Equal Protection Clause and foundational principles of justice.

**VI. THE ETHICAL AND MORAL FAILURE OF IMMUNITY DOCTRINES**

The creation and preservation of immunity doctrines undermine public confidence in the integrity of the government and the rule of law. When citizens are injured by those in power and courts refuse to hear their claims, it sends a clear message that there are two sets of rules: one for the governed, and one for the governing. This erodes the social contract, fosters resentment, and delegitimizes the very institutions intended to uphold justice.

**VII. HISTORICAL FOUNDATIONS AND THE FRAMERS' INTENT**

Founding-era writings further clarify the Constitution's intention that no government official be above the law. In Federalist No. 78 (Hamilton), Alexander Hamilton warned that the judiciary must exercise "merely judgment" and not political will or force. When courts create doctrines like immunity that effectively override constitutional rights, they abandon this limitation and arrogate to themselves unauthorized legislative power.

**Federalist No. 10** (Madison) by James Madison emphasized that the government's first duty is to protect against factions and unequal treatment under the law. Immunity doctrines violate this principle by systematically protecting government officials from consequences, leaving harmed individuals without remedy.

**In Federalist No. 46** (Madison), Madison also affirmed that "the ultimate authority… resides in the people alone." These doctrines directly contradict that proposition by removing the people's ability to hold public servants accountable through the courts.

The historical context surrounding the U.S. Constitution further reveals the dangerous departure immunity doctrines represent. The Framers, deeply wary of unchecked government power, intended for all public servants to be held accountable to the people. James Madison wrote in **Federalist No. 51**, "If men were angels, no government would be necessary." By creating judicial doctrines that place officials beyond reach, the courts have deviated from the original intent of limited government and public accountability.

Moreover, all government power in the United States is derived from the people. Public officials are not monarchs or sovereigns—they are fiduciaries who serve under the consent of the governed. Immunity doctrines in effect elevate them above the law, violating the foundational principle that no one is exempt from liability when they cause harm. The very notion that an official acting beyond or outside lawful authority can escape responsibility contradicts the doctrine of popular sovereignty enshrined in the Constitution and the ideals proclaimed in the Declaration of Independence (1776).

Founding-era writings further clarify the Constitution's intention that no government official be above the law. In Federalist No. 78, Alexander Hamilton warned that the judiciary must exercise "merely judgment" and not political will or force. When courts create doctrines like immunity that effectively override constitutional rights, they abandon this limitation and arrogate to themselves unauthorized legislative power.

**Federalist No. 10** by James Madison emphasized that the government's first duty is to protect against factions and unequal treatment under the law. Immunity doctrines violate this principle by systematically protecting government officials from consequences, leaving harmed individuals without remedy.

In **Federalist No. 46**, Madison also affirmed that "the ultimate authority… resides in the people alone." These doctrines directly contradict that proposition by removing the people's ability to hold public servants accountable through the courts.

The historical context surrounding the U.S. Constitution further reveals the dangerous departure immunity doctrines represent. The Framers, deeply wary of unchecked government power, intended for all public servants to be held accountable to the people. James Madison wrote in **Federalist No. 51**, "If men were angels, no government would be necessary." By creating judicial doctrines that place officials beyond reach, the courts have deviated from the original intent of limited government and public accountability.

Moreover, all government power in the United States is derived from the people. Public officials are not monarchs or sovereigns—they are fiduciaries who serve under the consent of the governed. Immunity doctrines in effect elevate them above the law, violating the foundational principle that no one is exempt from liability when they cause harm. The very notion that an official acting beyond or outside lawful authority can escape responsibility contradicts the doctrine of popular sovereignty enshrined in the Constitution.

**VIII. VIOLATION OF THE SUPREMACY CLAUSE**

The Declaration of Independence itself proclaims that governments derive "their just powers from the consent of the governed." Nowhere have the people granted consent to the judicial creation of immunity doctrines. On the contrary, these doctrines reflect an elite legal class insulating itself from the consequences of unconstitutional behavior.

Even where immunity doctrines have been deemed applicable to damages claims, courts have sometimes overstepped further by extending such protections to bar equitable relief, including declaratory or injunctive remedies. This is plainly inconsistent with the Supreme Court's decision in Ex parte Young, 209 U.S. 123 (1908), which made clear that public officials are not immune from suit when acting unconstitutionally and may be enjoined from ongoing violations. Blocking even non-monetary relief strips courts of their vital role in checking government overreach and extinguishes the rights of citizens to stop continuing constitutional harm.

**Article VI, Clause 2** of the United States Constitution—the Supremacy Clause—establishes that the Constitution and laws made in pursuance thereof shall be the "supreme Law of the Land," binding on all judges in every state. When judicially created doctrines such as qualified or absolute immunity conflict with constitutional rights guaranteed by the Bill of Rights or federal civil rights statutes like 42 U.S.C. § 1983, they effectively nullify superior law. In doing so, these doctrines violate the Supremacy Clause by allowing subordinate judicial policy to override supreme constitutional protections. Courts that apply immunity to bar constitutional claims engage in an unconstitutional act by subordinating the Constitution to a doctrine not rooted in legislation or constitutional authority.

**IX. CONCLUSION**

In effect, the judiciary's continued protection of unconstitutional actors through self-created immunity doctrines functions as an organized mechanism of concealment and unaccountability—akin to that of a coordinated syndicate. By systematically insulating fellow officials from liability through doctrines unsupported by any constitutional or democratic foundation, the judiciary has entrenched a framework that parallels the operations of an organized crime structure, where loyalty, secrecy, and self-preservation are prioritized over justice and lawful governance.

The doctrines of qualified, judicial, and absolute immunity are judicial inventions that have no basis in constitutional text, no foundation in legislation, and no legitimacy in a democratic society. They were not bestowed by the people and were not authorized by law. Their continued existence arguably violates the principles of constitutional governance, due process, equal protection, and the separation of powers. These doctrines contradict the original intent of the Framers, as expressed in the Federalist Papers, and violate the foundational idea of popular sovereignty and the supremacy of the Constitution. When one or a few judges first established these doctrines, they did so under their own interpretation of the Constitution, using discretion inherently shaped by their institutional bias. These judges, positioned within a closed legal fraternity, lacked impartiality and accountability, and in doing so, corrupted the law by creating protections not authorized by democratic mandate, statute, or constitutional text. These doctrines must be scrutinized, challenged, and ultimately abolished if the promise of equal justice under law is to be fulfilled.

Regards,

[signature] Date: 7/11/25

Jeremy Spencer (without prejudice or recourse)(man)
In propria persona Sui juris
C/O [1891 Grovepointe Dr.]
[Florence, KY 41042]
330-396-3566
Spencerj2121@yahoo.com