UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| JEREMY SPENCER, | : Case No. 2:25-cv-785 |
| Plaintiff, | : |
| vs. | : District Judge Sarah D. Morrison |
| | : Magistrate Judge Kimberly A. Jolson |
| JEFFERY R. GRIFFITH, *et al.*, | : |
| Defendants. | : |

**ORDER *and*
REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Amended Complaint. (Doc. 11-1, and accompanying exhibits).

## I. BACKGROUND

Plaintiff, a Kentucky resident proceeding pro se, sues Defendants Vinton County, Ohio, Judge Jeffrey R. Griffith, Clerk of Courts for Vinton County Municipal Court Shelley Reynolds, Vinton County Prosecutor William L. Archer, Jr., defense attorney John Clark, Jr., and the President of the Vinton County Board of Commissioners under federal and state law for alleged violations of his civil rights. Plaintiff's claims arise out of allegedly improper proceedings in Vinton County Municipal Court Case Nos. CRA2400096(A-E) (where Plaintiff faced charges for aggravated menacing and having weapons while under disability) and TRD2301182(A; B) (where Plaintiff faced charges for driving under suspension and unsafe backing). (Docs. 11-1; 11-5). His motion to proceed *in forma pauperis* has been granted by separate Order. (Doc. 10 at 1).

Observing that Plaintiff's initial Complaint (Doc. 1-1) suffered from several pleading

deficiencies, the Court entered an Order directing Plaintiff to file an Amended Complaint complying with the Federal Rules of Civil Procedure. (Doc. 10 at 3–4). In response to the Court's Order, Plaintiff filed the instant Amended Complaint. Plaintiff's Amended Complaint supersedes the previous Complaint and is the operative complaint in this case. *Scuba v. Wilkinson*, No. 1:06-cv-160, 2006 WL 2794939, at *2 (S.D. Ohio Sept. 27, 2006) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)); *see also Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes.") (quotation and citation omitted).

This matter is now before the Court for initial screening of Plaintiff Amended Complaint under 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of the Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

In performing the initial screen, the Court notes that, pursuant to Federal Rule of Civil Procedure 10, the exhibits to the Amended Complaint are considered part of the Amended Complaint "for all purposes." Fed. R. Civ. P. 10(c). But the Court makes an additional observation in this regard. Exhibit 5 to the Amended Complaint (Doc. 11-7) constitutes a flash drive of "video and audio" evidence related to the municipal court proceedings at issue in this case. It is well established that filing evidence on the Court's docket is limited to situations in which the proffer of evidence is made in conjunction with a motion or in opposition to a motion pending before the Court. *See* S.D. Ohio Civ. R. 7.2(d), (e). *See also Wooten v. Fed. Med. Ctr. Lexington*, No. 5:22-cv-52, 2022 WL 1275624, at *2 (E.D. Ky. Apr. 28, 2022) ("The Court's docket is not a repository for evidence in a case, and documents are not generally to be filed in the record unless in support

of (or opposition to) a motion pending before the Court."). Such evidence is immaterial at the pleading stage where the Court accepts as true the well-pleaded factual allegations contained in the Amended Complaint to determine whether it states a facially plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007).

## II. STANDARD

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

---

[1] Formerly 28 U.S.C. § 1915(d).

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits;

"'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. ALLEGATIONS

Plaintiff alleges that on May 2, 2024, he appeared in front of Defendant Judge Griffith in Case Nos. CRA2400096 and TRD 2301182 in the Vinton County Municipal Court. (Doc. 11-1 at 9). At the time, Plaintiff was being held in the Southeastern Regional Jail. (*Id*.). Although Plaintiff acknowledges that someone was in the room with him to present him forms and documents, he states that he was not told who was charging him nor served with a complaint. (*Id*.). Plaintiff further alleges that Judge Griffith failed to inquire whether he was under the influence or otherwise unable to proceed. (*Id*. at 10). Plaintiff reluctantly entered a plea of not guilty, requested a public defender, and remained in jail due to Judge Griffith imposing a $50,000 bond. (*Id*. at 9–10).

Over the course of the next four days, Plaintiff's father retained an attorney for him. (*Id*. at 10). The attorney, Defendant Clark, obtained a modified bond order, placing Plaintiff under house arrest at his parents' house. (*Id*.). Plaintiff was released from jail on May 10, 2024, with a GPS ankle monitor. (*Id*). But Plaintiff disputes that he willingly agreed to the terms of the modified bond order, claiming that he was under unspecified medical duress due to jail nurses ignoring his medical conditions. (*Id*.). Plaintiff was able to recover from his ailments through selfcare once released. (*Id*.).

Plaintiff states that on May 26, 2024, he raised multiple concerns to Clark by email and phone regarding his earlier appearance before Judge Griffith. (*Id*.). Clark informed him that he had not yet been arraigned and that an upcoming May 30, 2024 hearing was merely preliminary and did not require discovery. (*Id*. at 10–11). Plaintiff informed Clark that he did not want to

5

enter a plea without reviewing the evidence. (*Id*. at 10). Plaintiff, who practices Native American religion, also told Clark that certain religious property of his had been seized. (*Id*.). Plaintiff contends that Clark was dismissive about his concerns. (*Id*. at 11).

Plaintiff attended the hearing on May 30, 2024, by video, with Clark attending in person. (*Id*.). According to Plaintiff, the hearing started late and was rushed. (*Id*.). He claims that neither Judge Griffith nor Clark informed him of the nature of the hearing. (*Id*.). During the hearing, Defendant Prosecutor Archer dismissed the weapons while under disability charge. (*Id*.). Also, Clark made an oral motion for the return of Plaintiff's religious property. (*Id*.). But Plaintiff claims the motion failed to cite any legal authority, clarify the property at issue, or seek a return of Plaintiff's firearms even though the weapons charge had been dismissed. (*Id*.). Plaintiff asserts that at no time during the hearing was he read the charges against him or asked to enter a plea. (*Id*.).

Plaintiff states that between June 4 and June 26, 2024, he repeatedly asked Clark about the seized property, the nature and scope of discovery, and the legality of his ankle monitor. (*Id*. at 12). Plaintiff also asked for clarification regarding "legal sources and jurisdictional authority." (*Id*. at 13). Clark allegedly continued to be dismissive and threatened to withdraw. (*Id*.). Plaintiff states that he was also having financial issues with the bondsman, but Clark did not help. (*Id*.).

Another hearing was held on June 27, 2024. (*Id*.). Plaintiff again attended remotely, with Clark attending in person. (*Id*.). At the hearing, Clark indicated that he had not filed the paperwork for the return of Plaintiff's property and would file it "immediately." (*Id*.). An assistant prosecutor appeared, instead of Archer, and the hearing was continued until July 11, 2024. (*Id*.). Clark allegedly sent an email to Plaintiff later that day stating that Plaintiff was apparently served with

6

a copy of the complaint at the jail and apologizing for not having filed the paperwork for the return of his property. (*Id.*) Plaintiff disputes that he was served with a copy of the complaint. (*Id.*).

On July 7, 2024, Plaintiff again contacted Clark about the return of his property. (*Id.* at 14). Clark responded with a copy of a motion. (*Id.*). When Plaintiff then followed up with questions about the legality of his ankle monitor, Clark said that Plaintiff had contracted with the bondman and that jail was the alternative. (*Id.*).

Plaintiff states that shortly before the start of the July 11, 2024 hearing, he learned he would be attending by phone and not video. (*Id.*). Plaintiff states that he could not hear Judge Griffith or Archer, it was difficult to decipher who was speaking at any given time, and he felt that his right to confidential communications with Clark was violated. (*Id.* at 15). Although a plea agreement was reached, Clark allegedly failed to explain the details and there was no plea colloquy. (*Id.*). When Plaintiff received a copy of the plea agreement by email, he returned it with language indicating that his signature was "without prejudice" and made "under duress." (*Id.*). On July 12, 2024, Clark informed Plaintiff that Judge Griffith had rejected the agreement due to the added language and set an in-person hearing for August 8, 2024. (*Id.*). According to Plaintiff, Clark stated that he was "done" representing him but continued to communicate with him thereafter. (*Id.*).

Plaintiff apparently re-submitted the plea agreement to the court on July 16, 2024. (*Id.* at 16). Clark informed him that Judge Griffith and Archer had again rejected it and insisted that the ankle monitor would remain. (*Id.*). Clark also allegedly told Plaintiff that he had "create[ed] a mess." (*Id.*).

Between July 18 and 19, Plaintiff sent Judge Griffith and Clark an email regarding the return of his property and asking whether the return of his property was being conditioned on

7

Plaintiff accepting the plea. (*Id*.). Judge Griffith did not reply to the email. (*Id*.) Plaintiff asserts that Clark "deflected" the question and withheld pleadings, despite the upcoming August 8, 2024 court setting. (*Id*.). According to Plaintiff, Clark "refus[ed] to act despite legal obligation" and "hinder[ed] the proper administration of justice, including discovery, motion practice, and potential dismissal or appeal of charges." (*Id*.).

Between July 27, 2024, and August 6, 2024, Plaintiff asked Clark about the possibility of entering an Alford plea and raised concerns about being coerced. (*Id*.). Clark responded that Alford pleas were not allowed for misdemeanor charges. (*Id*.). Plaintiff asserts that when he challenged the lack of formal service, Clark referenced Criminal Rules 49 and 52, general definitions, and harmless error principles but failed to address Plaintiff's claim that he was never properly served with a complaint. (*Id*.).

Plaintiff alleges that when he arrived at court for the August 8, 2024 hearing, Clark did not speak to him. (*Id*. at 17). Plaintiff waited in the hallway due to the Court's limited space. (*Id*.). About an hour later, Clark brought out a finalized plea agreement, informed Plaintiff that the ankle monitor would be released, and that his seized property would be returned. (*Id*.). Plaintiff states, however, that he had no interaction on that day with Judge Griffith or Archer. (*Id.*). And, while Clark indicated that the plea agreement had been amended in Plaintiff's favor, Plaintiff contends that the agreement "did not itemize [fine and court cost] amounts or clearly organize the charges and corresponding penalties." (*Id*.). Plaintiff also alleges that "[s]everal pages were unnumbered and disorganized, and [his] signature appeared to have been crossed out on multiple pages—raising questions as to the validity of the agreement." (*Id*.). Additionally, Plaintiff contends that neither Clark nor Judge Griffith informed him that his guilty-plea conviction was appealable, and he felt pressured to accept the plea to get his property back. (*Id*.). Exhibits filed with the Amended

8

Complaint show that Plaintiff pled guilty to driving under suspension, the other charges against him were dismissed, and the fines and costs he faced totaled $310. (Doc. 11-5, at 2–9). No jail sentence was imposed. (*See id.*).

Thereafter, in December 2024, Plaintiff submitted Freedom of Information Act (FOIA) and Ohio Public Records Act requests but the responses he received from Defendant Clerk of Courts Reynolds were allegedly incomplete. (*Id.*). Plaintiff asserts that in June 2025 he filed multiple documents in the Vinton County Municipal Court, "including plea withdrawal, delayed appeal, fraud notice, recusal motion, and renewed records requests." (Doc. 11-1 at 19). Plaintiff contends that he has not received a response. (*Id.*). On July 7, 2025, Plaintiff filed a writ of mandamus in the Ohio Supreme Court against Reynolds regarding her response to his records requests. (*Id.*). Although not indicated in the Amended Complaint, the Ohio Supreme Court dismissed the writ action on October 1, 2025.[2]

As a result of the above allegations, Plaintiff seeks monetary and injunctive relief. (*Id.* at 25–26).

## IV. ANALYSIS

For the reasons set forth below, the Amended Complaint is subject to dismissal in its entirety. 28 U.S.C. § 1915(e)(2)(b).

---

[2]Viewed at https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2025/0889 (under Plaintiff's name). *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)) (courts may take judicial notice of court records available online to the public); *see also Landt v. Farley*, 2012 WL 4473209, at *1 (N.D. Ohio Sept. 26, 2012) (noting that the "court may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system and via the internet.") (quotation marks and citation omitted).

### A.   *Heck* doctrine inapplicable

As an initial matter, the Court notes that the doctrine announced under *Heck v. Humphrey*, 512 U.S. 477 (1994), which holds that a civil rights lawsuit is barred if it would necessarily imply the invalidity of a plaintiff's prior criminal conviction or sentence, unless the plaintiff establishes that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus," *id.* at 512 U.S.486-87, does not bar consideration of Plaintiff's claims.

Because Plaintiff's driving under suspension conviction by guilty plea in Case No. TRD2301182 did not result in incarceration, *see Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *1 (6th Cir. Sept. 28, 1999), and Plaintiff's remaining charge in that case as well as the charges in Case No. CRA2400096 were dismissed (*see* Doc. 11-5 at 3–6), *Heck* is inapplicable.

### B.   **Plaintiff Has Failed to State a Claim under 42 U.S.C. §§ 1983, 1985, and 1986**

#### 1.   *Judicial immunity protects Judge Griffith*

The Court next considers Plaintiff's claims against Judge Griffith.  Plaintiff brings claims against Judge Griffith under 42 U.S.C § 1983 for alleged violations of his First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights by obstructing access to evidence, "delaying records," using religious property as plea leverage, imposing excessive bail and "coercive conditions," and failing to ensure a knowing and voluntary plea, and under 42 U.S.C. § 1985 for allegedly conspiring to violate Plaintiff's civil rights.  (Doc. 11-1 at 19–21).  Judge Griffith is entitled to absolute judicial immunity from these claims.

Judicial immunity shields judges, and other public officers, "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S.

800, 806 (1982). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Courts have recognized that absolute judicial immunity applies to claims under §§ 1983 and 1985, and, although not specifically raised against Judge Griffith, judicial immunity also applies to claims under § 1986. *See, e.g.*, *Pickett v. Williams*, No. 3:17-CV-557, 2019 WL 3021196, at *7 n.5 (N.D. Tex. June 24, 2019), *report and recommendation adopted*, 2019 W 1986 WL 3006985 (N.D. Tex. July 10, 2019) ("Additionally, any § 1985 claim against the judge is barred by judicial immunity . . . for the same reasons as the § 1983 claim"); *Jones v. Abraham*, No. 25-13507, 2025 WL 3553196, at *2 (E.D. Mich. Dec. 11, 2025) (applying judicial immunity to claims under § 1986) (citing cases).

Judicial immunity is overcome only if the actions taken were not in the judge's judicial capacity and if the actions taken were in absence of all jurisdiction. *Id.* at 11–12. Here, Judge Griffith's conduct in setting bail and adjudicating the municipal court proceedings were indisputably judicial in nature. Perhaps recognizing this, Plaintiff asserts that, without proof that he was served with a complaint, Judge Giffith failed to acquire jurisdiction over Plaintiff's underlying cases. Plaintiff's argument is a non-starter. Indeed, Ohio courts have rejected such arguments. *See Sanders v. Summit Cty. Ct. of Common Pleas*, No. 30835, 2023 WL 6459029, at *2 (Ohio App. October 4, 2023) (allegations of improperly served indictment did not defeat subject matter jurisdiction) (citing cases).

Plaintiff has failed to allege facts overcoming Judge Griffith's judicial immunity. Plaintiff's claims against Judge Griffith under §§ 1983, 1985, and any claims against him under § 1986, are therefore barred by judicial immunity and should be dismissed.

### 2. *Prosecutorial immunity protects Defendant Archer.*

Plaintiff reasserts the above claims against Defendant Archer (*see* Doc. 11-1 at 19–21), with similar results. "Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability." *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000). This immunity also applies to claims brought pursuant to 42 U.S.C. § 1985 and § 1986. *Kanu v. City of Cincinnati*, 2021 WL 779078, at *7 (S.D. Ohio Mar. 1, 2021), *report and recommendation adopted*, 2021 WL 3036722 (S.D. Ohio July 19, 2021) (Defendant prosecutors entitled to prosecutorial immunity on plaintiff's 42 U.S.C. §§ 1983, 1985, and 1986 claims.).

Prosecutors are "absolutely immune from liability" for their actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (citation and quotations omitted). "[A]bsolute immunity," however, "may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Id.* at 342 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 433 n.33 (1976)). "[W]hen determining whether a government official's actions fit within the category of actions traditionally entitled to absolute immunity, . . . courts must look to the nature of the function performed, not the identity of the actor who performed it." *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citations omitted). The Sixth Circuit has found that:

> conduct by a prosecutor that is . . . investigative or administrative in function includes: giving legal advice to police; making out-of-court statements at a press conference; making statements in an affidavit supporting an application for an arrest warrant; and authorizing warrantless wiretaps in the interest of national security. On the other hand, prosecutors have absolute immunity from suits for malicious prosecution and for defamation, and . . . this immunity extends to the knowing use of false testimony before the grand jury and at trial. Likewise, they have absolute immunity for the following actions: appearances at probable cause

> and grand jury hearings; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings; and preparation of witnesses for trial.

*Id.* (internal citations, quotations, and alterations omitted).

This case involves a straightforward application of these principles. Plaintiff challenges Archer's actions in the prosecution of the underlying municipal court cases and, more specifically, in the proceedings relating to Plaintiff's guilty plea. The challenged actions fall squarely within the ambit of prosecutorial immunity. *See Fields v. Hall*, 2009 WL 274965, *3 (S.D. Ohio, February 4, 2009) ("Since plaintiff's claims against [the defendant prosecutor] relate to his conduct before the grand jury and as an advocate for the State during plea negotiations, the conduct in question falls squarely under the prosecutorial absolute immunity bar recognized in *Imbler* and *Buckley*."); *see also Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) (citations omitted) ("A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity."); *Ghaith v. Rauschenberger*, 493 F. App'x 731, 740 n.4 (6th Cir. 2012) (concluding that prosecutors' actions at bond hearing "would be shielded by absolute prosecutorial immunity . . . since they were acting as advocates"); *Cady v. Arenac Cty.*, 574 F.3d 334, 341 (6th Cir. 2009) (citation and quotations omitted) (holding that "[c]onduct associated with plea bargains has long been held by this court to be so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity"); *Gooding v. Gonzales*, No. 3:10CV33, 2011 WL 841261, at *5 (W.D. Va. Mar. 7, 2011) (collecting cases) (holding that prosecutors' actions related to a detention hearing, plea negotiations, and sentencing proceedings were "all part of the criminal process arising after probable cause exists" and, therefore, entitled to absolute immunity).

Plaintiff's Complaint, therefore, fails to state a claim upon which relief may be granted against Defendant Archer under §§ 1983, 1985, and 1986 and should be dismissed.

13

### 3. Quasi-Judicial Immunity Protects Defendant Reynolds

Plaintiff's allegations against Defendant Reynolds also fail to state a plausible claim. Although he purports to sue her under §§ 1983 and 1985, he fails to plead facts establishing her personal involvement in the allegedly unconstitutional conduct. *See Monell v. Department of Social Svs.*, 436 U.S. 658, 691–92 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

Moreover, even if he had pled such facts, "[q]uasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). *See, e.g.*, *Wymore v. Green*, 245 F. App'x 780, 783 (10th Cir. 2007) (affirming district court's grant of absolute quasi-judicial immunity to state clerk of court for performing judicially related duties), *cert. denied*, 552 U.S. 1194 (2008); *Ayers v. Reynolds*, No. 94-4124, 1995 WL 386435, at *2 (8th Cir. 1995) (finding a clerk of court to be entitled to quasi-judicial immunity, noting "[f]iling court orders and preparing and transmitting the certified record are functions closely associated with the judicial process"); *Hargis v. Jones*, 986 F.2d 1421, 1993 WL 24146, at *1 (6th Cir. 1993) (finding a clerk of court to be entitled to quasi-judicial immunity in connection with the alleged loss of state court criminal trial transcripts and that allegation that defendant "lied to the courts about his trial records"). *See also Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2002) (finding that a claim against court clerks who failed to provide the plaintiff with copies of previous filings and transcripts properly dismissed on the basis of quasi-judicial immunity).

And, to the extent that Plaintiff seeks to hold Reynolds liable in connection with responses to his FOIA requests, FOIA only authorizes suit against federal agencies and does not apply to individual officers or state agencies. *See* 5 U.S.C. §§ 551(1), 552(a); *Grand Cent. Partnership v.*

*Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999). Reynolds is an individual employed by the Vinton County Municipal Courts and is not a federal agency.

As for any claim that Reynolds violated Ohio's open record laws, an alleged violation of state law will not support a claim under §1983, and Plaintiff has not pled a § 1985 conspiracy claim with the requisite particularity. "Whether proceeding under § 1983 or § 1985, [a p]laintiff must plead a conspiracy with particularity and show some evidence of coordinated actions between the alleged conspirators." *Moore v. Kulkarni*, No. 18-12280, 2019 WL 4312135, at *10 (E.D. Mich. May 31, 2019); *see also Twombly*, 550 U.S. at 565 (allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) (conspiracy claims must be pled with some degree of specificity; vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983). The Amended Complaint includes no factual allegations to plausibly suggest that the named Defendants—the judge, prosecutor, clerk of courts, and defense attorney involved in Plaintiff's municipal court cases—shared a conspiratorial objective or otherwise planned together to deprive him of a constitutionally-protected right. To the contrary, Plaintiff's own allegations reflect that his request for a modified bond was granted, his seized property was returned, and all but one of the charges against him were dismissed. Accordingly, the Amended Complaint should be dismissed against Defendant Reynolds.

    4.    *No Claim against Clark under §§ 1983, 1985, and 1986*

Likewise, Plaintiff's §§ 1983, 1985, and 1986 claims fail against his defense counsel. First, Clark was not acting under the color of state law within the meaning of § 1983. *Polk County v. Dodson*, 454 U.S. 312, 320-25 (1981). It is firmly established that a defense attorney, regardless

of whether he is a public defender or a private attorney, is not a state actor for purposes of § 1983. *Id.* at 325 ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983.").

Additionally, while defense counsel are generally not immune from § 1983 liability for conspiracies to deprive clients of their constitutional rights, *see Tower v. Glover*, 467 U.S. 914 (1984), as previously noted, Plaintiff's vague and conclusory allegations of a conspiracy are insufficient to state a cognizable claim under § 1983. *See Gutierrez*, 826 F.2d at 1538–39; *Twombly*, 550 U.S. at 555. *Cf. Horton v. Martin*, 137 F. App'x 773, 775–76 (6th Cir. 2005) (affirming dismissal of § 1983 claim against attorney who represented the plaintiff in a parole revocation hearing given the lack of any "factual support or evidence upon which a conspiracy [with state officials] could be based"). Plaintiff's conclusory allegations under 42 U.S.C. § 1985 are similarly subject to summary dismissal. *See Moore v. Kulkarni*, No. 1:18-cv-12280, 2019 WL 4312135, at *10 (E.D. Mich. May 31, 2019). Finally, § 1986 is merely a remedial provision for conspiracies properly alleged under § 1985. Thus, without a proper § 1985 claim, § 1986 provides no remedy. *See Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008).

    **C.**    **Claims under 42 U.S.C. § 2000bb-1 Should Be Dismissed**

As this Court has already found in an earlier case filed by Plaintiff involving the same charges as are at issue here, Plaintiff cannot state a claim under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, because the statute has been declared to be unconstitutional. *See Spencer v. Tilton*, No. 2:25-CV-780, 2025 WL 3187129, at *6 (S.D. Ohio Nov. 14, 2025),

16

*report and recommendation adopted*, 2025 WL 3473058 (S.D. Ohio Dec. 3, 2025) ("As to Plaintiff's claims under the RFRA, that Supreme Court has determined that this statute, as applied to the states, is unconstitutional.") (citing cases). Plaintiff's RFRA claims should therefore be dismissed.

        **D.    Claims for Fraud on the Court Should Be Dismissed**

Nor can Plaintiff state a claim for fraud on the court. He does not challenge any actions by Defendants before this Court. *Id*. at *9 (citing *Lewis v. Walker*, No. 17-6041, 2018 WL 4348063, at *4 (6th Cir. Mar. 15, 2018) ("[Plaintiff] cites no authority to support his proposition that a claim of fraud upon the court can be used to recover damages in a § 1983 action for fraud alleged to have occurred in a prior proceeding."); *Stephens v. Nat'l City Corp.*, No. 1:19CV00784, 2020 WL 435439, at *8 (N.D. Ohio Jan. 28, 2020) ("Plaintiff may only maintain a fraud upon the court cause of action in the court where the alleged fraud was committed.")). Plaintiff's claim for fraud on the Court should therefore be dismissed.

        **E.    Claims under Article Three Should Be Dismissed**

Plaintiff's assertion that Judge Griffith and Archer violated Article III of the United States Constitution by performing official duties "in a county court lacking constitutional jurisdiction" (Doc. 11-1 at 20) also lacks merit. Article III, which governs the jurisdiction of the federal courts, provides that "[t]he judicial power shall extend to all cases, in law and equity, arising under . . . the laws of the United States." Art. III, § 2. Because Article III does not govern jurisdiction in the Vinton County Municipal Courts, this claim should be dismissed.

        **F.    Claims for Municipal Liability Should be Dismissed**

Plaintiff also brings § 1983 claims against the President of the Vinton County Board of Commissioners, alleging that Vinton County maintained unconstitutional policies or customs and

17

failed to properly train or supervise judicial staff and county prosecutors. (Doc. 11-1 at 23–24). But Plaintiff has failed to identify any unconstitutional policy, as is necessary to state a claim under *Monell*. *See Brawner v. Scott Cty.*, 14 F.4th 585, 598 (6th Cir. 2021). Nor does Plaintiff allege facts from which the Court could infer a deliberate indifference on the part of the County to his or other Vinton County Municipal Court litigants' rights. *Mancini v. City of Garfield Heights*, No. 94-3183, 1994 WL 548830, at *1 (6th Cir. Oct. 6, 1994) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363–64 (6th Cir.1993)).

But there is a more fundamental flaw with Plaintiff's claims. Vinton County "cannot be held responsible for the acts of the Municipal Court employees because municipal courts are part of the state court system and are not subject to the supervision of municipal governments." *Mancini*, 1994 WL 548830, at *2.

Thus, Plaintiff's § 1983 claims against the Vinton County Board President should be dismissed.

### G. Remaining State Law Claims Should Be Dismissed

Finally, the Court should decline to exercise jurisdiction over Plaintiff's remaining state-law claims for violation of various Ohio constitutional, statutory, professional conduct, and local charter provisions. Given that no federal questions remain, Plaintiff's state law claims against Defendants should be dismissed as well. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) ("Generally, if the federal claims are dismissed before trial, the state law claims should be dismissed as well." (cleaned up and internal quotation omitted)).

V.

In sum, the federal claims in Plaintiff's Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2). The dismissal of these claims should not be construed as precluding Plaintiff from pursuing any motions that he has filed in his underlying Vinton County Municipal Court cases. (*See* Doc. 11-1 at 19). The Court should decline to exercise supplemental jurisdiction over Plaintiff's pendant state-law claims. *See* 28 U.S.C. § 1367(c)(3).

VI. **CONCLUSION**

**IT IS THEREFORE RECOMMENDED THAT:**

1. The federal claims in Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**. 28 U.S.C. §§ 1915(e)(2).

2. The Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's pendant state-law claims. *See* 28 U.S.C. § 1367(c)(3).

3. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith.

**IT IS THEREFORE ORDERED THAT:**

In light of the above recommendations, it is **ORDERED** that Plaintiff's Motion to Accept Amended Complaint as Filed and to Conduct Screening under 28 U.S.C. § 1915 (Doc. 12) is **DENIED as moot.**

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response

to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date: February 6, 2026                     /s/ Kimberly A. Jolson
                                           KIMBERLY A. JOLSON
                                           UNITED STATES MAGISTRATE JUDGE